UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>c/o U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20530,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MOTOR TANKER BELLA 1 BEARING INTERNATIONAL MARITIME NUMBER 9230880,<br><br>　　　　Defendant *In Rem*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case: 1:26−cv−00992<br>Assigned To : Unassigned<br>Assign. Date : 3/20/2026<br>Description: Gen. Civil (E−DECK)<br><br>**Civil A. No.**<br><br><br>**<u>FILED UNDER SEAL</u>** |

## <u>UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*</u>

COMES NOW, Plaintiff the United States of America (the "United States"), by and through the United States Attorney's Office for the District of Columbia, the Money Laundering, Narcotics, and Forfeiture Section of the Criminal Division, and the Counterintelligence and Export Control Section of the National Security Division, which brings this verified complaint for forfeiture in a civil action *in rem*, in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, against: the Motor Tanker (M/T) BELLA 1 bearing International Maritime Number ("IMO") 9230880 ("Defendant Property")[1], and alleges as follows:

### NATURE OF THE ACTION AND DEFENDANT *IN REM*

1.　　　This *in rem* forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI"). The United States is

---

[1] While the BELLA 1 was fleeing from the United States Coast Guard, the vessel changed its name to the MARINERA.

**RECEIVED**

MAR 20 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

investigating the transportation and sale of Iranian oil products for the benefit of the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"). This action seeks to forfeit the Defendant Property which affords the Iranian Ministry of Petroleum, the National Iranian Oil Company ("NIOC"), and the vessel's owner and its commercial and technical manager a source of influence over the Iranian Ministry of Petroleum, NIOC, the IRGC, including the IRGC-QF, by transporting Iranian petrochemical products to generate revenue for the IRGC, a designated Foreign Terrorist Organization (FTO).

2.  The BELLA 1 was seized after it rejected attempts by the United States Coast Guard to board the vessel in international waters after the Coast Guard confirmed with officials in Guyana that the BELLA 1 was not legitimately flagged by Guyana.

### JURISDICTION AND VENUE

3.  This Court has *in rem* jurisdiction over the Defendant Property pursuant to 28 U.S.C. §§ 1333, 1345, and 1355.

4.  Venue is also proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2).

5.  Pursuant to 14 U.S.C. § 522(a) and 28 U.S.C. §§ 2461(b), 1333(1), this court has jurisdiction for property subject to forfeiture on the high seas.

### FACTS GIVING RISE TO FORFEITURE

**A.**   **Relevant Entities**

    **i.**   **Government of Iran**

6.  On January 19, 1984, the United States designated Iran as a state sponsor of terrorism. *See* https://www.state.gov/reports/country-reports-on-terrorism-2020/iran/. For 2020, the most recent year for which Country Reports on Terrorism are available, the State Department concluded that "Iran continued its terrorist-related activity in 2020, including support

2

for Hizballah, Palestinian terrorist groups in Gaza, and various terrorist and militant groups in Iraq, Syria, and elsewhere throughout the Middle East." *Id.* The State Department further found that "Iran used the Islamic Revolutionary Guard Corps – Qods Force (IRGC-QF) to provide support to terrorist organizations, provide cover for associated covert operations, and create instability in the region," and that "the IRGC-QF is Iran's primary mechanism for cultivating and supporting terrorist activity abroad." *Id.* To date, the United States has not delisted Iran as a state sponsor of terrorism. *See* https://www.state.gov/state-sponsors-of-terrorism/.

### ii. Iranian Ministry of Petroleum

7. According to the Iranian Ministry of Petroleum's website, the ministry "is a state-run organ affiliated with the Executive branch of government" that was established in 1979. https://en.mop.ir/home/. The ministry reports that it "is tasked with exercising the principle of Iran's ownership of and national sovereignty over oil and gas resources as well as separating governance from administrative tasks in the development of oil and gas industry." *Id.* The ministry exercises its authority over the petroleum industry through four subsidiaries – NIOC, the National Iranian Gas Company, the National Iranian Oil Refining and Distribution Company, and the National Petrochemical Company. *Id.* ("The structural organization of the Ministry comprises a head office and four main subsidiaries – National Iranian Oil Company (NIOC), National Iranian Gas Company (NIGC), National Iranian Oil Refining and Distribution Company (NIORDC) and National Petrochemical Company (NPC). Through subsidiaries, the Ministry supervises exploration, extraction, marketing and selling of crude oil, natural gas and petroleum products in the country.").

8. The Iranian government's ownership of petroleum resources stems from Articles 44 and 45 of Iran's constitution. Article 44 provides in part: "The economy of the Islamic

Republic of Iran is to consist of three sectors: state, cooperative, and private, and is to be based on systematic and sound planning.   The state sector is to include all large-scale and mother industries, foreign trade, major minerals, banking, insurance, power generation, dams and large-scale irrigation networks, radio and television, post, telegraph and telephone services, aviation, shipping, roads, railroads and the like; all these will be publicly owned and administered by the State."   https://www.constituteproject.org/constitution/Iran_1989.pdf?lang=en.  [2]   Article   45 provides in part: "Public wealth and property, such as uncultivated or abandoned land, mineral deposits, seas, lakes, rivers and other public water-ways, mountains, valleys, forests, marshland, natural forests, unenclosed pastureland, legacies without heirs, property of undetermined ownership, and public property recovered from usurpers, shall be at the disposal of the Islamic government for it to utilize in accordance with the public interest."   *Id.*

9.      Article 2 of Iran's Oil Law (Sep. 30, 1987) provides: "The country's oil resources are part of the Anfal and public wealth, and according to Article 45 of the Constitution, is at the disposal of the Islamic government, and all facilities, equipment, assets and investments that have been or will be made by the Ministry of Oil and subsidiaries at home and abroad will belong to the Iranian people and to the Islamic government.   The exercise of sovereignty and ownership of oil resources and facilities belongs to the Islamic Government, which according to the provisions and powers enumerated in this law, it is the responsibility of the Ministry of Oil to act in accordance with the general principles and plans of the country."   https://en.mop.ir/portal/home/?news/368984/368988/379478/petroleum-law.

---

[2]      The Constitution of the Islamic Republic of Iran was adopted and went into force in 1979.  It has been amended once, on July 28, 1989.

10.     On October 26, 2020, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated the Iranian Ministry of Petroleum under Executive Order 13,224 for providing financial support to the Islamic Revolutionary Guard Corps – Quds Force ("IRGC-QF").   *See* https://home.treasury.gov/news/press-releases/sm1165.   OFAC found that "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme."   *Id.*

### iii.     Islamic Revolutionary Guard Corps

11.     The IRGC is a branch of the Iranian armed forces whose purpose is to defend the country's political system.    The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations.

12.     The Department of the Treasury has found "[t]he IRGC is Iran's most powerful economic actor, dominating many sectors of the economy, including energy, construction, and banking."   https://home.treasury.gov/news/press-releases/tg1718.   According to OFAC, "[t]he IRGC and its major holdings, such as the Basij Cooperative Foundation and Khatam al-Anbiya, have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion-dollar businesses and maintaining extensive economic interests in the defense, construction, aviation, oil, banking, metal, automobile and mining industries, controlling multi-billion dollar businesses."   https://home.treasury.gov/news/press-releases/sm703.

13.     The IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil.   Specifically, OFAC has found that the IRGC-QF uses a "complex network of intermediaries … to obfuscate its involvement in selling   Iranian   oil."        https://home.treasury.gov/news/press-releases/sm767;   *see   also* https://home.treasury.gov/news/press-releases/tg1718 ("The IRGC, long a target of U.S. sanctions,

has a history of attempting to circumvent sanctions by maintaining a complex network of front companies."). The Secretary of the Treasury has previously found that holding groups and companies in the petrochemical sector and elsewhere "provide financial lifelines to the IRGC." https://home.treasury.gov/news/press-releases/sm703.

14. The IRGC generates substantial revenues from the sale of petroleum products. For example, OFAC has reported that "[i]n spring 2019 alone, this IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, predominantly to the Syrian regime. These shipments, taken collectively, sold for more than half a billion dollars. The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels [of] gas oil, bringing in another quarter billion dollars." https://home.treasury.gov/news/press-releases/sm767.

15. The IRGC uses the proceeds from the distribution of petroleum to fund its terror activities. OFAC has found that: "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." https://home.treasury.gov/news/press-releases/sm885; *see also* https://home. treasury.gov/news/press-releases/sm703 ("The profits from [the IRGC's economic] activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad."). The Secretary of the Treasury has stated: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." https://home.treasury.gov/news/press-releases/sm885.

16.     On October 25, 2007, OFAC designated the IRGC-QF under Executive Order 13,224, which is "aimed at freezing the assets of terrorists and their supporters." *See* https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm.   In part, OFAC found that "[t]he Qods Force, a branch of the Islamic Revolutionary Guard Corps (IRGC; aka Iranian Revolutionary Guard Corps), provides material support to the Taliban, Lebanese Hizballah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine-General Command (PFLP-GC)." *Id.*   On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order 13,224 for providing material support, including training, personnel, and military equipment, to the IRGC-QF.   *See* https://home.treasury.gov/news/press-releases/sm0177.

17.     On April 8, 2019, the President announced that he would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189).   *See* https://ir.usembassy.gov/statement-from-the-president-on-the-designation-of-the-islamic-revolutionary-guard-corps-as-a-foreign-terrorist-organization/.   The announcement noted, in part, that "the IRGC actively participates in, finances, and promotes terrorism as a tool of statecraft," and warned that "[i]f you are doing business with the IRGC, you will be bankrolling terrorism." *Id.*   On April 8, 2019, the State Department similarly announced the pending designation of the IRGC, including the IRGC-QF.   *See* https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html. That announcement noted that "[T]he IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign." *Id.* On April 15, 2019, the Secretary of State published a notice in the Federal Register that he had designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the INA.   *See* 84 Fed. Reg. 15,278 (Apr. 15, 2019), https://www.federalregister.gov/

documents/2019/04/15/2019-07415/in-the-matter-of-the-designation-of-the-islamic-revolutionary-guard-corps-and-other-aliases-as-a.

18.    The IRGC and IRGC-QF act in foreign commerce with specific aims to threaten U.S. interests and the national security of the United States.   The following is just a brief list of many examples of how the IRGC and IRGC-QF engage in foreign commerce and activities outside the borders of Iran to harm the interests of the United States:

a.    In likely retaliation for the death of former IRGC-QF commander Qasem Soleimani, in 2021, a member of the IRGC used interstate commerce facilities in a failed plot to commit murder-for-hire and provide material support to a transnational murder plot targeting former National Security Advisor John Bolton, https://www.justice.gov/opa/pr/member-irans-islamic-revolutionary-guard-corps-irgc-charged-plot-murder-former-national.

b.    In January 2007, the IRGC-QF led by Abdul Reza Shahla'i planned an attack in Karbala,    Iraq    that    killed    five    U.S.    soldiers    and    wounded    three    others, https://rewardsforjustice.net/rewards/abdul-reza-shahlai/.

c.    In June 1996, the IRGC was responsible for planning the attack on the Khobar Towers in Dhahran, Saudi Arabia, during which 19 U.S. Air Force personnel were killed and more than 350 were injured, *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 174 (D.D.C. 2010).   IRGC senior officials recruited the attackers and worked in conjunction with them and Hezbollah, operating out of a terrorist base in the Bekaa or Beqaa Valley in Lebanon where the IRGC provided supplies and funds for the attack. *Id.*

19.    Through these actions and many others, the IRGC and IRGC-QF's terrorism affects foreign commerce in a manner that harms the interests of the United States, both domestic and abroad.   Indeed, the entire purpose of the IRGC and IRGC-QF's campaigns of terror are to thwart

the United States' diplomatic efforts, including its support for peace in the Middle East and recognition of Israel, by threatening the security of U.S. nationals and attempting to instill fear in the citizens of this country located within and outside its territorial boundaries.   *See In re Sealed Case*, 936 F.3d 582, 592 (D.C. Cir. 2019) (criminal defendant's use of drug trafficking to support terrorist organizations "magnifies the effect of his conduct on commerce between the countries where he was operating and the United States").   These terrorist activities undertaken in foreign commerce plainly have a domestic effect on the United States.

### iv.   National Iranian Oil Company

20.   NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil.   NIOC describes itself as "one of the largest oil firms in the world with huge hydrocarbon reserves."   https://en.nioc.ir/en-US/en.nioc/5696/page/NIOC-at-a-Glance.   NIOC reports that it is "responsible for organizing and policy-making activities of the oil industry, including exploration, drilling, production, research and development, as well as oil and gas exports." *Id.*; *see also* https://home.treasury.gov/news/press-releases/sm1165 ("NIOC, overseen by the Ministry of Petroleum, is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran.").   According to OFAC, the distribution of NIOC oil "helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) and its terrorist proxies." https://home.treasury.gov/news/press-releases/sm885.

21.   On September 24, 2012, the Department of the Treasury reported to Congress that it had determined that NIOC was an agent or affiliate of the IRGC.   *See* https://home.treasury. gov/news/press-releases/tg1718.   On October 26, 2020, OFAC designated NIOC pursuant to Executive Order 13,224 "for having materially assisted, sponsored, or provided financial, material,

or technological support for, or goods or services in support of, the IRGC-QF." *See* https://home.treasury.gov/news/press-releases/sm1165.

### v. Iranian Oil Terminals Company

22. The Iranian Oil Terminals Company ("IOTC") is a subsidiary of NIOC that operates the Kharg Oil Terminal at Kharg Island, Iran. *See* https://en.nioc.ir/en-US/en.nioc/5699 /page/Subsidiaries (listing IOTC as a subsidiary); *see also* https://www.iotco.ir/en/aboutus/ introductioncompany (stating that IOTC is "one of the companies under [the] umbrella of [the] National Iranian Oil Company"). IOTC describes itself as "an operational, specialized and professional organization that has the duty of all reservation affairs, crude oil, oil products, liquefied gas and marine services export and import operations along with providing measurement and lab services." *Id.* According to IOTC, its responsibilities include "support and sustained continuation of oil and gas production in the country in four operational zones of Kharg Oil Terminals." *Id.* According to Orbis, a corporate reporting service, the government of Iran is the "global ultimate owner" of IOTC.

### vi. Kharg Oil Terminal

23. Kharg Oil Terminal is an oil terminal located at Kharg Island, Iran that is operated by IOTC. The terminal has quays or jetties for loading petroleum onto crude oil tankers. *See* https://www.iotco.ir/en/oilterminals/kharg.

24. According to IOTC's website, Kharg Oil Terminal receives oil via pipeline from Iran's South Oilfields, which are operated by the National Iranian South Oil Company ("NISOC"). *See id.*

### vii. National Iranian South Oil Company

10

25.     According to NISOC's LinkedIn page, "National Iranian South Oil Company (NISOC) . . . is a government-owned corporation under the direction of the Ministry of Petroleum of Iran and operates as a subsidiary of National Iranian Oil Company." *See also* https://en.nioc.ir/en-US/en.nioc/5699/page/Subsidiaries (listing NISOC as a subsidiary of NIOC).

**viii.    Louis Marine Shipholding Enterprises S.A.**

26.     Louis Marine Shipholding Enterprises S.A. ("Louis Marine"), is a Turkey-registered company and the current owner of the BELLA 1. Louis Marine and the BELLA 1 were each designated by OFAC on June 10, 2024, as a part of Sai'd al-Jamal's sanctions evasion network, which, according to OFAC, worked in support of the Houthis and the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/jy2399. OFAC blocked the BELLA 1 as property in which Louis Marine has an interest. *Id.* Further, according to OFAC, Louis Marine and the BELLA 1 had moved cargo on behalf of a Hizballah-owned company. *Id.*[3]

**ix.    M/T BELLA 1**

27.     The M/T BELLA is a crude oil tanker built in 2002. It claimed to fly the flag of Guyana, but according to information received from Guyana, the vessel was not legitimately flagged by the country and was considered stateless.[4]

28.     A data and analytics company that provides real-time intelligence on global commodity and shipping markets reports that the BELLA 1 exhibited multiple AIS spoofing incidents between 2024 and 2025. These include repeated falsified transmissions from on or about August 18, 2025, until on or about September 3, 2025, and from on or about July 25, 2025, to on

---

[3] Based on media reports, BurevestMarine LLC, purports to be the new owner of the BELLA 1. *See* https://www.nbcnews.com/world/russia/us-tanker-seizures-russia-shadow-fleet-putin-economy-oil-venezuela-rcna252963.

[4] *See* fn. 1 regarding the name change from the BELLA 1 to the MARINERA as it was fleeing the U.S. Coast Guard.

or about July 26, 2025, both of which occurred near Iran. The BELLA 1 also spoofed its location near the United Arab Emirates from on or about August 20, 2024, until on or about Augst 25, 2024, and near Iran from on or about June 14, 2024, until on or about September 12, 2024.

29.     AIS "spoofing" is a deceptive shipping practice that involves tampering with the vessel's Automatic Identification System ("AIS"), a tool used to broadcast vessel position, vessel identity, and other critical information to nearby vessels and maritime authorities, used for collision avoidance.

30.     AIS spoofing involves the deliberate falsification of AIS messages, misleading vessels and maritime authorities about a ship's true location and identity, a potential illicit activity. This can be done by transmitting false AIS data or altering legitimate ones. By manipulating AIS transmissions, malicious actors, especially tankers operators, can create "ghost ships," obscure true vessel movements, or simulate fleet movements, creating significant security vulnerabilities. AIS spoofing is a method regularly deployed by individuals and entities involved in shipping illicit oil, including Iran-origin oil for the benefit of the IRGC, as spoofing makes it more difficult to detect an oil shipment's origins.

**B.     Venezuela Oil Exports**

31.     According to a confidential human source ("CHS")[5], the BELLA 1 has a history of exporting crude oil from the José Terminal in Venezuela, which is owned and operated by Petróleos de Venezuela, S.A. ("PdVSA") and its subsidiaries. PdVSA is the Venezuelan state-owned oil company, which was designated by OFAC in January 2019 as an SDN pursuant to E.O. 13850. According to OFAC, PdVSA is a primary source of Venezuela's income and foreign

---

[5] From 2021 to the present, this CHS and the CHS's company have been paid approximately $560,000 for time and professional services in this and related investigations. The United States has additionally reimbursed the CHS for travel costs incurred in related investigations.

currency (including U.S. dollars) and "has long been a vehicle for corruption," allowing the Maduro regime to embezzle billions of dollars from PdVSA for the personal gain of corrupt Venezuelan officials and businessmen. *See* https://home.treasury.gov/news/press-releases/sm594. One example of the BELLA 1 loading Venezuela oil is discussed below.

32.     According to the CHS, on or about May 12, 2023, the BELLA 1 loaded approximately 1.9 million barrels of crude oil from the José Terminal.



*BELLA 1 loading at the José Terminal on or about May 12, 2023*

33.     On or about July 7, 2023, the BELLA 1 transferred approximately 957,827 barrels of the oil via ship-to-ship ("STS") transfer to the M/T CATALINA 7 (IMO 9310159)[6] in the South China Sea. We know from our training and experience that STS transfers can be used to obscure the origin of petrochemical products to evade sanctions and other laws and regulations.

---

[6] On or about March 20, 2025, OFAC sanctioned the CATALINA 7 and its Hong Kong-based owner, Canes Venatici Limited, were sanctioned pursuant to E.O. 13902 for operating in the petroleum sector of the Iranian economy. *See* https://home.treasury.gov/news/press-releases/sb0056.



*Satellite image of the BELLA 1 with CATALINA 7 on or about July 7, 2023*

34.     On or about July 9, 2023, the BELLA 1 transferred the remaining portion of the oil, approximately 950,000 barrels, via ship-to-ship transfer to the M/T ARINA (IMO 9248813) in the South China Sea.



*Satellite image of the BELLA 1 with ARINA on or about July 9, 2023*

14

**C.**    BELLA 1 loadings at Kharg Oil Terminal

35.    According to the CHS, between in or around September 2022, and in or around September 2025, the BELLA 1 loaded approximately 11.8 million barrels of Iran-origin crude oil – worth hundreds of millions of dollars – from Kharg Island, Iran, most recently in or around August 2025. For example:

36.    On or about January 21, 2025, BELLA 1 was captured on satellite imagery southeast of Kharg Island, Iran.



*The BELLA 1 southeast of Kharg Island, Iran on or about January 21, 2025*

37.    Two days later, on or about January 23, 2025, the BELLA 1 was en route to dock at the Azarpad Jetty, Kharg Island, Iran. This Synthetic Aperture Radar (SAR) image shows the vessel being guided by three tugboats.[7]



*The BELLA 1 on or about January 23, 2025*

38.    On or about January 23, 2025, the BELLA 1 was captured on satellite imagery at coordinates 29.14188° N, 50.37327° E, southeast of Kharg Island, Iran. According to the CHS, an analysis of the shadows cast by the vessel shows that the BELLA 1 was without cargo.

---

[7] SAR imagery stands for Synthetic Aperture Radar imagery. This radar technology creates high-resolution images of the Earth's surface by transmitting microwave pulses from a moving platform like a satellite or aircraft and processing the echoes that return.

16



*The BELLA 1 on or about January 23, 2025*

39.     According to the CHS, between on or about February 26, 2025, and on or about February 28, 2025, the BELLA 1 engaged in an STS transfer with the M/T GELOR (IMO 9185528) at coordinates 1.97145° N, 104.74974° E in the South China Sea. The BELLA 1 was observed offloading cargo to the GELOR approximately one month after being seen empty near Kharg Island, Iran. The CHS believes BELLA 1 loaded at Kharg Island, Iran in or around January 2025, although poor weather conditions prevented the capture of satellite imagery. There is probable cause to believe the cargo offloaded to GELOR was a portion of the oil that the BELLA 1 loaded at Kharg Island in or around January 2025.

40.     According to the CHS, between on or about March 3, 2025, and on or about March 5, 2025, the BELLA 1 engaged in an STS transfer with the M/T ZEVS (IMO 9168946) at coordinates 2.06283° N, 104.79450° E in the South China Sea. The BELLA 1 was captured offloading cargo to the ZEVS days after the STS transfer with the GELOR, approximately one month after being seen near Kharg Island, Iran. There is probable cause to believe the cargo

offloaded to the ZEVS was a portion of the oil the loaded at Kharg Island, Iran in or around January 2025.



*The BELLA 1 STS transfer with the ZEVS on or about March 3, 2025*

41.     According to satellite imagery reviewed by the CHS, on or about July 22, 2025, the BELLA 1 loaded crude oil from Kharg Island, Iran. BELLA 1 was captured on imagery loading at the T-jetty, Kharg Island, Iran, at coordinates 29.22367° N, 50.34105° E. At this time, the BELLA 1's AIS transponder was turned off.    The cargo was later offloaded in Asia.



*The BELLA 1 at the T-jetty in Kharg Island, Iran on or about July 22, 2025*

42. According to satellite imagery reviewed by the CHS, on or about August 19, 2025, the BELLA 1 again loaded crude oil from Kharg Island, Iran. BELLA 1 was captured on imagery loading at the T-jetty, Kharg Island, Iran, at coordinates 29.22365° N, 50.34106° E. At this time, the BELLA 1 was spoofing her AIS position, claiming to be approximately 450 miles away in the Gulf of Oman. This cargo was also later offloaded in Asia.



*The BELLA 1 at the T-jetty in Kharg Island, Iran on or about August 19, 2025*

43. The BELLA 1 has been seized and is currently enroute to the United States.

### COUNT ONE – FORFEITURE
### 18 U.S.C. § 981(a)(1)(G)(i)

44. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 43 above as if fully set forth herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(G)(i).

45. The IRGC is a designated foreign terrorist organization.

46. The IRGC-QF is a designated foreign terrorist organization.

47. The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), as foreign assets of the IRGC and the IRGC-QF, both designated foreign terrorist organizations, which have engaged in planning and perpetrating federal crimes of

terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, citizens or residents of the United States, or their property.

48.     The Defendant Property also, or alternatively, affords persons (including, without limitation, NIOC, IOTC, NISOC, and Company B) sources of influence for the IRGC and the IRGC-QF within the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

WHEREFORE, the plaintiff prays that all persons who reasonably appear to be potential claimants with interests in the Defendant Property be cited to appear herein and answer the complaint; that the defendant property be forfeited and condemned to the United States of America; that upon Final Decree of Forfeiture, the United States Marshal dispose of the defendant property according to law; and that the plaintiff have such other and further relief as this Court deems proper and just.

Dated: March 20, 2026
   Washington, D.C.

       Respectfully Submitted,

       Jeanine Ferris Pirro
       United States Attorney

       By:   */s/ Rajbir Datta*
          Rajbir Datta
          N.Y Bar 5206073
          Assistant United States Attorney
          National Security Section
          U.S. Attorney's Office
          District of Columbia
          601 D Street, N.W.
          Washington, D.C. 20579
          (202) 252-7687
          Rajbir.Datta@usdoj.gov

John Eisenberg
Assistant Attorney General
National Security Division

By:   */s/ Sean Heiden*
    Sean Heiden
    D.C. Bar 1617636
    Acting Deputy Chief
    Counterintelligence and Export Control
    National Security Division
    U.S. Department of Justice
    Sean.Heiden2@usdoj.gov

Margaret A. Moeser
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division
U.S. Department of Justice

By:   */s/ Joshua L. Sohn*
    Joshua L. Sohn
    Trial Attorney

21

## **VERIFICATION**

I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 20th day of March 2026.

*/s/ Cindy Burnham*
Special Agent Cindy Burnham
Federal Bureau of Investigation


I, Matthew Harris, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 20th day of March 2026.

*/s/ Matthew Harris*
Special Agent Matthew Harris
Homeland Security Investigations