**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER *BELLA 1* BEARING INTERNATIONAL MARITIME NUMBER 9230880,<br><br>Defendant,<br><br>BUREVESTMARIN LLC,<br><br>Claimant. | Civil Action No. 26-992 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANT BUREVESTMARIN LLC'S MOTION TO DISMISS**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 8

A. The Amended Complaint Fails to Adequately Plead a Lawful Basis for Exercising *In Rem* Jurisdiction Over a Foreign-Flagged Vessel Seized on the High Seas ..... 8

1. There Is *In Rem* Jurisdiction Over Foreign-Flagged Vessels on the High Seas Only Under Certain Narrow Exceptions ..... 9

2. The Government Has Not Adequately Alleged Statelessness ..... 10

3. The Cited Jurisdictional Statutes Must Be Read in Harmony with International Law ..... 12

B. Section 1355(b)(2) Does Not Supply *In Rem* Jurisdiction Over a Vessel Seized by the United States on the High Seas ..... 13

C. Venue Is Independently Improper Because the Vessel Was Not Brought Into Any U.S. Judicial District ..... 14

D. The Amended Complaint Fails to State Sufficiently Detailed Facts to Support a Reasonable Belief the Government Will Be Able to Meet Its Burden of Proof at Trial ..... 16

V. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Carr v. United States*,
560 U.S. 438 (2010)....................21

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
485 U.S. 568 (1988)....................13

*Est. of Levin v. Wells Fargo Bank, N.A.*,
156 F.4th 632 (D.C. Cir. 2025)....................9

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)....................8

*Harris v. Bowser*,
369 F. Supp. 3d 93 (D.D.C. 2019)....................8

*INS v. St. Cyr*,
533 U.S. 289 (2001)....................13

*Johnson v. Deloitte Servs., LLP*,
939 F. Supp. 2d 1 (D.D.C. 2013)....................7, 8

*Luan v. United States*,
722 F.3d 388 (D.C. Cir. 2013)....................8

*Murray v. Schooner Charming Betsy*,
6 U.S. (2 Cranch) 64 (1804)....................12

*Pinson v. U.S. Dep't of Just.*,
No. CV 18-486 (RC), 2022 WL 703924 (D.D.C. Mar. 9, 2022)....................8

*res. Republic Nat'l Bank of Miami v. United States*,
506 U.S. 80 (1992)....................9

*Sherley v. Sebelius*,
644 F.3d 388 (D.C. Cir. 2011)....................21

*United States v. 155 Virtual Currency Assets*,
No. 20-CV-2228 (RC), 2021 WL 1340971 (D.D.C. Apr. 9, 2021) ........................................ 17

*United States v. 40,000.00 in U.S. Currency*,
No. 1:09-cv-383, 2010 WL 2330353 (W.D.N.C. May 11, 2010), *rep. & recomm. adopted*, 2010 WL 2330352 (W.D.N.C. June 7, 2010) ............................................. 6

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
571 F. Supp. 2d 1 (D.D.C. 2008) ........................................................................................ 6

*United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*,
No. CV 04-0798 (PLF), 2023 WL 5000213 (D.D.C. Aug. 4, 2023) ........................................ 8

*United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278 & 747.714/278 in Banco Español de Crédito, Spain*,
295 F.3d 23 (D.C. Cir. 2002) ............................................................................................ 14

*United States v. All Petroleum-Product Cargo Onboard M/T Arina*,
173 F.4th 342 (D.C. Cir. 2026) ......................................................................................... 22

*United States v. Bustos-Guzman*,
685 F.2d 1278 (11th Cir. 1982) ......................................................................................... 11

*United States v. FaceMaskCenter.com*,
No. CV 20-2142 (RC), 2021 WL 1578294 (D.D.C. Apr. 22, 2021) ...................................... 17

*United States v. Flores*,
289 U.S. 137 (1933) ........................................................................................................ 13

*United States v. Funds From Prudential Sec.*,
362 F. Supp. 2d 75 (D.D.C. 2005) ...................................................................................... 7

*United States v. Hsin-Yung*,
97 F. Supp. 2d 24 (D.D.C. 2000) ...................................................................................... 10

*United States v. Louisiana*,
394 U.S. 11, 23 (1969), s*uppl. decision*, 394 U.S. 836 (1969) ................................................ 9

*United States v. Marino-Garcia*,
679 F.2d 1373 (11th Cir. 1982) ................................................................................... 9, 10

*United States v. Matos-Luchi*,
627 F.3d 1 (1st Cir. 2010) ................................................................................................ 11

*United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*,
480 F. Supp. 3d 39 (D.D.C. 2020) ..................................................................................... 18

*United States v. One 1974 Cessna Model 310R Aircraft, Serial No. 310R0203, FAA Registration No. N5083J*, 432 F. Supp. 364 (D.S.C. 1977) ........ 15

*United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1 (D.D.C. 2013) ........ 7

**Statutes**

14 U.S.C. § 522(a) ........ 12, 13

18 U.S.C. § 981(a)(1)(G)(i) ........ 1, 5, 7, 13, 16, 17, 20, 21, 22

18 U.S.C. § 981(f) ........ 21, 22

18 U.S.C. § 983(a)(3)(A) ........ 6

18 U.S.C. § 983(c) ........ 7

18 U.S.C. § 2232(b) ........ 20

18 U.S.C. § 2332b(g)(5) ........ 6, 17

18 U.S.C. § 2339B ........ 20

28 U.S.C. § 1333 ........ 13

28 U.S.C. § 1345 ........ 13

28 U.S.C. § 1355(b) ........ 14, 16

28 U.S.C. § 1355(b)(1) ........ 15, 16

28 U.S.C. § 1355(b)(2) ........ 13, 14, 15

28 U.S.C. § 1355(d) ........ 14, 16

28 U.S.C. § 1395(c) ........ 2, 15, 16

28 U.S.C. § 2461(b) ........ 12, 13

46 U.S.C. § 70502(d)(1) ........ 11

**Rules**

Fed. R. Civ. P. 8(a) ........ 6

Fed. R. Civ. P. 12(b)(1) ........ 1, 8

Fed. R. Civ. P. 12(b)(2).....1, 8, 9

Fed. R. Civ. P. 12(b)(3).....1, 7

Fed. R. Civ. P. 12(b)(6).....1

Fed. R. Civ. P., Supp. R. G(2)(b).....14, 16

Fed. R. Civ. P., Supp. R. G(2)(f).....4, 6, 7, 11, 16, 18

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 10.....13

**Other Authorities**

Convention on the High Seas, Art. 6, Apr. 29, 1958.....10

Office of Foreign Assets Control, General License X, Authorizing the Production, Delivery and Sale of Crude Oil, Petrochemical Products, and Petroleum Products of Iranian-Origin through August 21, 2026 (June 21, 2026) https://ofac.treasury.gov/media/936206/download?inline.....19

Office of Foreign Assets Control, General License U, Authorizing the Delivery and Sale of Crude Oil and Petroleum Products of Iranian-Origin Loaded on Vessels as of March 20, 2026, https://ofac.treasury.gov/media/935376/download?inline.....19

Office of Foreign Assets Control, General License X1, Revocation and Wind Down of June 21, 2026 Authorization for the Production, Delivery and Sale of Crude Oil, Petrochemical Products, and Petroleum Products of Iranian Origin (July 7, 2026), https://ofac.treasury.gov/media/936446/download?inline.....19

Restatement (Third) of the Foreign Relations Law of the United States, § 115 cmt. a (1987).....12

United Nations Convention on the Law of the Sea, Art. 92(1), Dec. 10, 1982, 1833 U.N.T.S. 397.....9

5B Wright & Miller, Federal Practice & Procedure § 1351 (3d ed. 2023).....9

Pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6), Claimant Burevestmarin LLC ("Burevestmarin") submits this Memorandum of Points and Authorities in support of its Motion to Dismiss the Amended Complaint.

## I. INTRODUCTION

In this action, the Government seeks forfeiture of the MOTOR TANKER *BELLA 1* BEARING INTERNATIONAL MARITIME NUMBER 9230880 (the "*Marinera*"),[1] a vessel owned by Burevestmarin that was seized by the United States on the high seas in the North Atlantic in January 2026. The Government seeks forfeiture of a foreign-owned tanker seized on the high seas, but the Amended Complaint does not plead the facts needed to support that extraordinary remedy. It does not adequately allege a lawful basis for *in rem* jurisdiction. It does not plead venue in this District. And it does not state sufficiently detailed facts supporting a reasonable belief that the Government can prove forfeitability under 18 U.S.C. § 981(a)(1)(G)(i). In these several respects, all of which independently warrant dismissal, the Amended Complaint falls well short of the heightened pleading standard applicable to civil forfeiture actions. Accordingly, this Court should dismiss the Government's forfeiture action.

***First,*** the Amended Complaint fails to adequately plead a lawful basis for exercising *in rem* jurisdiction over the *Marinera*, a foreign-flagged vessel seized on the high seas hundreds of miles from the United States. The Government's case for *in rem* jurisdiction rests on its entirely unfounded assertion that the high seas qualify as a "foreign country" for purposes of 28 U.S.C. § 1355's statutory grant of jurisdiction. The case further rests on its allegation that the *Marinera*

[1] At the time Burevestmarin purchased MOTOR TANKER *BELLA 1* BEARING INTERNATIONAL MARITIME NUMBER 9230880, the vessel was renamed "Marinera" and acquired a temporary Russian flag.

is a stateless vessel and therefore subject to U.S. jurisdiction. But the Government does not even attempt to allege any of the statutory bases for statelessness. Instead, the Government relies exclusively on one unspecified, hearsay assertion allegedly from "officials in Guyana" that the *Marinera* was flying a false Guyanese flag. Nothing more. Thus, the allegation of statelessness is inadequately pleaded by any measure, much less the heightened pleading standard applicable here.

***Second,*** the Amended Complaint fails to allege a basis for venue in this District. The only statute the Government cites in support of venue in the District of Columbia, by its plain language, (1) pertains to *jurisdiction* rather than venue, and (2) has no application to seizures by the United States on the high seas; rather, it applies to seizures within a foreign country. Again, the *Marinera* was seized on the high seas in the North Atlantic, hundreds of miles from U.S. soil. Nor does any other statute provide a basis for venue in this District. To the contrary, the statute that does prescribe the appropriate venue for property seized outside any judicial district (28 U.S.C. § 1395(c)) provides that venue is appropriate in the district where the vessel *has been brought*. That statute has no application here because the *Marinera* was not brought into any judicial district. Public vessel-tracking information indicates that the vessel is en route to South Asia for scrapping, and the Government has reported that it is expected to arrive at a salvage/scrapping shipyard on or about October 15, 2026.

***Third,*** on the merits, the Government fails to meet the heightened pleading standard for civil forfeiture. The Government's theory is that the *Marinera* is subject to forfeiture because either it is an asset of two designated foreign terrorist organizations, the Islamic Revolutionary Guard Corps ("IRGC") and the IRGC Quds Force ("IRGC-QF"), or it affords "sources of influence" over those same organizations, merely because the vessel is alleged to have transferred

oil at Iranian ports. This theory is impermissibly attenuated and lacks adequate factual support in the Government's allegations. Furthermore, the Government's claim is directly contradicted by the Executive Branch's own recent actions and proclamations about Iranian oil—contradictory positions that the Government does not attempt to reconcile.

Accordingly, Burevestmarin respectfully requests that the Court dismiss the Amended Complaint with respect to the *Marinera*.

## II. FACTUAL BACKGROUND

Burevestmarin is a ship-owning corporation that has owned the *Marinera* since December 2025. On January 7, 2026, the Government seized the *Marinera* on the high seas. The Clerk did not issue a Warrant for Arrest *in rem* of the *Marinera* in this civil forfeiture action until April 28, 2026. *See* Dkt. 9. The Government had already seized the vessel months earlier, on January 7, 2026.

The *Marinera* is no longer in the Government's possession, although, as "blocked property" pursuant to prior OFAC designation, it remains substantially in the Government's control. The Government purportedly transferred the *Marinera* to third party Global Marketing Systems Inc. ("GMS"), a buyer of ships for recycling, and the vessel is currently on its way to Bangladesh for scrapping, with an expected arrival date of October 15, 2026. Dkt. 23; Oct. 6 H'g Tr. 10:24–11:1. Despite requests from Burevestmarin, the Government has identified no applicable OFAC license supporting either the Government's secret transfer to GMS or GMS's continued dealings in blocked property.

At the time of its seizure, the *Marinera* flew the flag of Guyana. Am. Compl. ¶ 27. However, the Government alleges that "according to information received from Guyana, the vessel was not legitimately flagged by the country." *Id.* Thus, according to the Government, the vessel

"was considered stateless." *Id.* A conclusion that the vessel "was considered stateless" is not a pleaded fact. Rule G(2)(f) requires the facts that support that conclusion. The Government makes no further allegations—and describes no documentary evidence—to support its claim that the *Marinera* is stateless, which is the sole factual predicate the Government invokes to justify both its high-seas seizure and this Court's exercise of forfeiture jurisdiction.

The Government filed the Complaint for civil forfeiture of the *Marinera* on March 20, 2026. The Government subsequently filed an Amended Complaint on September 3, 2026. The Amended Complaint alleges that the *Marinera* loaded oil at the José Terminal in Venezuela on one occasion and was observed loading oil in the vicinity of Iran's Kharg Island on three occasions in the last two years. Am. Compl. ¶¶ 32–42. Several of these allegations are based in part on the assertions of an unverified "confidential human source ('CHS')," who was paid $560,000 for their services. *Id.* ¶ 31. The Amended Complaint also alleges that an unidentified "data and analytics company" reports that the *Marinera* "exhibited multiple [Automatic Identification System] spoofing incidents between 2024 and 2025." *Id.* ¶ 28. In any event, because no U.S. nexus existed with respect to any of those transfers, none constituted a violation of U.S. sanctions, and the Government does not allege otherwise.

While the Amended Complaint alleges that the *Marinera* is subject to forfeiture as a foreign asset of the IRGC and the IRGC-QF, the Government admitted in its original Complaint (and then conspicuously removed that admission in its subsequent Amended Complaint) that Burevestmarin "purports" to be the *Marinera*'s owner. Compl. at 11 n.3.[2] The Amended Complaint sweeps that

[2] Despite that, the Government continues to allege that the *Marinera* "affords persons (including . . . ***Company B***) sources of influence for the IRGC. . . " Am. Compl. ¶ 48 (emphasis added). "Company B" seems to be a reference to Burevestmarin, indicating that the Government acknowledges Burevestmarin as the owner of the *Marinera*, rather than Louis Marine.

fact under the rug and does not allege any affiliation between Burevestmarin and the *Marinera*. Moreover, the Amended Complaint alleges no connection whatsoever between Burevestmarin and Iran or any Iranian entity, or the details of any transaction or communication between the *Marinera* or Burevestmarin and the Iranian government or any Iranian entity. Burevestmarin is a Russian-registered entity. Critically, as described in more detail below, the Amended Complaint's fundamental logical leap—that carrying Iranian cargo is the equivalent of being a source of influence over the IRGC or IRGC-QF, or *even further*, of being owned by the IRGC or IRGC-QF—has been fatally undermined by assertions and actions undertaken by the very same Executive Branch ***on the very same day*** that it filed the original Complaint. On March 20, 2026, the same day that the Government (under seal and *ex parte*) alleged that the *Marinera* was a source of influence over the IRGC and IRGC-QF, it ***expressly licensed*** the international sale of Iranian oil—an action that would be illegal under multiple statutes were the shipment of Iranian oil in itself necessarily the equivalent of providing a means of support to the IRGC or IRGC-QF or becoming the property of the IRGC or IRGC-QF.

The Amended Complaint does not allege any nexus of the *Marinera*'s activities to the District of Columbia or the United States of any kind. It does not allege any involvement of U.S. persons or U.S. financial institutions in the *Marinera*'s activities. It simply fails to describe any U.S. offense or any basis for this civil action being filed with this Court.

The Amended Complaint asserts a single claim for forfeiture of the *Marinera* and the $9,940 found on board (the "Defendant Property") pursuant to 18 U.S.C. § 981(a)(1)(G)(i). Am. Compl. ¶¶ 44–48. The Amended Complaint alleges that the Defendant Property is subject to forfeiture under the statute because it constitutes "foreign assets of the IRGC and the IRGC-QF" and "affords persons (including, without limitation, [the National Iranian Oil Company, the Iranian

Oil Terminals Company, the National Iranian South Oil Company, and Burevestmarin]) sources of influence [over] the IRGC and the IRGC-QF." *Id.* ¶¶ 47–48. The IRGC and IRGC-QF are designated foreign terrorist organizations under Section 219 of the Immigration and Nationality Act and are alleged to have engaged in planning and perpetrating federal crimes of terrorism as defined in 18 U.S.C. § 2332b(g)(5). *Id.* ¶ 47.

## III. LEGAL STANDARD

A civil asset forfeiture complaint is subject to a "higher standard of pleading" than a typical civil action. *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008). "Because civil forfeiture *in rem* provides the government with a powerful tool to effectuate an immediate deprivation of property . . . pleading requirements under the Supplemental Rules are more stringent than the general pleading requirements found in the Federal Rules of Civil Procedure." *United States v. 40,000.00 in U.S. Currency*, No. 1:09-cv-383, 2010 WL 2330353, at *2 (W.D.N.C. May 11, 2010), *rep. & recomm. adopted*, 2010 WL 2330352 (W.D.N.C. June 7, 2010).

Most civil actions are subject to the familiar "notice pleading" standard embodied by Federal Rule of Civil Procedure 8(a), under which "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the pleading requirements for civil asset forfeiture actions are set forth in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"). 18 U.S.C. § 983(a)(3)(A). Under Supplemental Rule G(2)(f), the complaint in a civil forfeiture action must "state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).

Whereas *Iqbal* requires mere facial plausibility and does not impose a "probability requirement," *Iqbal*, 556 U.S. at 678, Supplemental Rule G(2)(f) requires that the Government plead facts giving rise to a "reasonable belief" that the Government will prevail. Supp. R. G(2)(f). This is a "heightened particularity requirement . . . designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (granting motion to dismiss asset forfeiture complaint where government failed to substantiate allegation that defendant property was derived from or traceable to illicit activity).

In a civil asset forfeiture action, the Government ultimately bears the burden of establishing, by a preponderance of the evidence, that the property is subject to forfeiture. *See United States v. Funds From Prudential Sec.*, 362 F. Supp. 2d 75, 80–81 (D.D.C. 2005) (citing 18 U.S.C. § 983(c)). Specifically, here, the Government must sufficiently allege that the *Marinera* is either a foreign asset of an "individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism (as defined in [18 U.S.C. §] 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property" or "afford[s] any person a source of influence over any such entity or organization." 18 U.S.C. § 981(a)(1)(G)(i).

In considering a motion to dismiss for improper venue under Rule 12(b)(3), "the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Johnson v. Deloitte Servs., LLP*, 939 F. Supp. 2d 1, 3 (D.D.C. 2013) (citation omitted). "The court may consider material outside of the pleadings," and "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Id.* (citations omitted). "Unless there are pertinent

factual disputes to resolve, a challenge to venue presents a pure question of law." *Id.* (citation omitted). Similarly, on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), courts "accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged," but those allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion . . . . A court need not accept as true a legal conclusion couched as a factual allegation or an inference unsupported by the facts set out in the complaint." *Harris v. Bowser*, 369 F. Supp. 3d 93, 98–99 (D.D.C. 2019) (citations and internal quotation marks omitted).

By contrast, in considering a motion to dismiss for lack of personal jurisdiction (or here, *in rem* jurisdiction) under Rule 12(b)(2), "[w]hile factual discrepancies in the record must be resolved in favor of the plaintiff . . . a court is not required to accept as true the plaintiff's 'conclusory statements' or 'bare allegations' . . . ." *Pinson v. U.S. Dep't of Just.*, No. CV 18-486 (RC), 2022 WL 703924, at *4 (D.D.C. Mar. 9, 2022) (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)). "The court may instead receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (citation and internal quotation marks omitted).

## IV. ARGUMENT

### A. The Amended Complaint Fails to Adequately Plead a Lawful Basis for Exercising *In Rem* Jurisdiction Over a Foreign-Flagged Vessel Seized on the High Seas

In a civil forfeiture case, the property the Government seeks to forfeit is a party to the litigation. The Court therefore must have *in rem* jurisdiction over that property. *Luan v. United States*, 722 F.3d 388, 397, 399 & n.15 (D.C. Cir. 2013); *see United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, No. CV 04-0798 (PLF), 2023 WL 5000213, at *18 (D.D.C. Aug. 4,

2023) ("'Although Rule 12(b)(2) only refers to 'lack of personal jurisdiction, the provision presumably is sufficiently elastic to embrace a defense or objection that the district court lacks in rem or quasi-in-rem jurisdiction'" (quoting 5B Wright & Miller, Federal Practice & Procedure § 1351 (3d ed. 2023))). *In rem* jurisdiction is established through the valid seizure of the *res*. *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 84 (1992) ("[A] valid seizure of the *res* is a prerequisite to the initiation of an *in rem* civil forfeiture proceeding."); *Est. of Levin v. Wells Fargo Bank, N.A.*, 156 F.4th 632, 642 (D.C. Cir. 2025) (same). Even at the pleading stage, a civil asset forfeiture complaint must "state the grounds for . . . in rem jurisdiction over the defendant property." Supp. R. G(2)(b).

### 1. There Is *In Rem* Jurisdiction Over Foreign-Flagged Vessels on the High Seas Only Under Certain Narrow Exceptions

The United States seized the *res*—the *Marinera*—on the high seas hundreds of miles from the United States. Am. Compl. ¶ 2. The high seas are "international waters not subject to the dominion of any single nation." *United States v. Louisiana*, 394 U.S. 11, 23 (1969), s*uppl. decision*, 394 U.S. 836 (1969). The *Marinera* flies the flag of Guyana. Am. Compl. ¶ 27. Under international law, foreign-flagged vessels on the high seas "are normally considered within the exclusive jurisdiction of the country whose flag they fly." *United States v. Marino-Garcia*, 679 F.2d 1373, 1380 (11th Cir. 1982); *see* United Nations Convention on the Law of the Sea, Art. 92(1), Dec. 10, 1982, 1833 U.N.T.S. 397 (reflecting customary international law that "[s]hips shall sail under the flag of one State only, and save in exceptional cases expressly provided for in international treaties or in this Convention, shall be subject to its exclusive jurisdiction on the high seas"). However, consistent with international law, U.S. courts have established a limited set of exceptions under which the United States may exercise jurisdiction over a foreign-flagged vessel on the high seas. Those exceptions include where the vessel is engaged in certain universally

prohibited activities, such as piracy or the slave trade; or where the vessel is stateless. *Marino-Garcia*, 679 F.2d at 1381–83. Vessels that falsely claim nationality are considered stateless. *United States v. Hsin-Yung*, 97 F. Supp. 2d 24, 27 (D.D.C. 2000). Such vessels are "international pariahs" with "no internationally recognized right to navigate freely on the high seas," and are therefore subject to the jurisdiction of any nation, including the United States. *See Marino-Garcia*, 679 F.2d at 1382 (citing Convention on the High Seas, Art. 6, Apr. 29, 1958).

**2. The Government Has Not Adequately Alleged Statelessness**

The only allegation the Government has offered that might subject the foreign-flagged *Marinera* to the jurisdiction of the United States and thereby authorize the seizure of the vessel on the high seas is that the *Marinera* is stateless. *See* Am. Compl. ¶ 27. But the Government fails to adequately allege facts to substantiate this allegation. Rather, the Government merely alleges that "the Coast Guard ***confirmed with officials in Guyana*** that the [*Marinera*] was not legitimately flagged by Guyana" and "was considered stateless." *Id.* ¶¶ 2, 27 (emphasis added). The Government obscures the source of this unspecified hearsay, simply stating that the "Coast Guard confirmed with officials in Guyana," and provides no documentary support to corroborate its allegation. *Id.* ¶ 2. It offers no indication of what actual information was allegedly shared or by whom, nor any records that would suggest a basis to conclude that these unnamed persons accurately arrived at the conclusion that the *Marinera* was stateless. In other words, the Government asks this Court to order an extraordinary remedy—the forfeiture of an oil tanker owned by an entity that has *nothing* to do with Iran—based solely on an unsupported, naked hearsay allegation from "officials in Guyana." The Court should reject this improper invitation.

Moreover, the Government's allegation that unnamed and unspecified "officials in Guyana" provided information regarding the *Marinera*'s alleged statelessness does not comport with what is required to establish that a vessel is stateless under U.S. or international law. Although

this case is not brought under the Maritime Drug Law Enforcement Act (MDLEA), Congress's definition of "vessel without nationality" in that Act reflects the same international-law concept on which the Government relies. The MDLEA defines a "vessel without nationality" as follows:

> (A) a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> (B) a vessel aboard which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel;
>
> (C) a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality; and
>
> (D) a vessel aboard which no individual, on request of an officer of the United States authorized to enforce applicable provisions of United States law, claims to be the master or is identified as the individual in charge, and that has no other claim of nationality or registry under paragraph (1) or (2) of subsection (e).

46 U.S.C. § 70502(d)(1). This definition is consistent with longstanding principles of international law, which holds that flying a flag is "prima facie proof" of nationality that may be rebutted when similar conditions are met. *United States v. Bustos-Guzman*, 685 F.2d 1278, 1280 (11th Cir. 1982) (per curiam); *see generally United States v. Matos-Luchi*, 627 F.3d 1, 5–7 (1st Cir. 2010).

The Government does not allege any of the criteria necessary to establish statelessness to justify the seizure. Rather, its only allegation is that the *Marinera* is not legitimately flagged according to "officials in Guyana." Am Compl. ¶ 2. The Government offers no information about which officials provided this information, how they learned it, or their qualifications to discern it. These allegations fall well short of the Government's heightened pleading standard under Supplemental Rule G(2)(f): the Government has not alleged "sufficiently detailed facts to support

a reasonable belief" that it will be able to meet its burden of proof at trial that the seizure of the *Marinera* was valid such that it can establish *in rem* jurisdiction over the *Marinera*.[3]

### 3. The Cited Jurisdictional Statutes Must Be Read in Harmony with International Law

Lastly, to the extent the Government seeks to argue that jurisdictional statutes provide *in rem* jurisdiction over foreign-flagged vessels on the high seas absent statelessness or other narrow enumerated exceptions, it is incorrect. The statutory framework must be understood against the background international law proposition that vessels on the high seas are subject to the exclusive jurisdiction of the flag state, subject only to narrow exceptions. *See supra* at 9–10. The *Charming Betsy* canon has long instructed that "an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains." *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804); Restatement (Third) of the Foreign Relations Law of the United States, § 115 cmt. a (1987) ("It is generally assumed that Congress does not intend to repudiate an international obligation . . . .").

The *Charming Betsy* canon applies with particular force here to the extent the Government seeks to construe statutes to authorize a seizure on the high seas that is contrary to international law. *See, e.g.*, 14 U.S.C. § 522(a) (authorizing Coast Guard seizures on the high seas only as to a "vessel subject to the jurisdiction, or to the operation of any law, of the United States"); 28 U.S.C. § 2461(b) (providing a "mode of recovery" for forfeitures when a seizure occurs "on the high seas"). Read in harmony with *Charming Betsy*, those provisions cannot be taken to confer a

[3] Indeed, given the purported provenance of the "confirm[ation]" regarding the Guyanese flag, Burevestmarin anticipates that the Government may compound its failures in pleading by invoking state secret and other diplomatic privileges regarding communications with the U.S. Embassy or foreign diplomatic partners, erasing any possible relevance of this hearsay. While the Court is well positioned to dismiss the Amended Complaint even without striking the allegation of the officials' hearsay, the Government should not be permitted to rely *at all* on that allegation in defending the Amended Complaint without expressly disclaiming any intent to rely on state secret or diplomatic privileges to shield the disclosure of the "confirm[ation]" purportedly provided.

general power to seize a foreign-flag vessel on the high seas absent a pleaded and provable basis that international law recognizes—to wit, valid statelessness.[4]

For all of these reasons, the Amended Complaint must be dismissed for failure to adequately allege *in rem* jurisdiction over the *Marinera*.

### B. Section 1355(b)(2) Does Not Supply *In Rem* Jurisdiction Over a Vessel Seized by the United States on the High Seas

Section 1355 of Title 28 controls jurisdiction over this civil forfeiture action, but Section 1355(b)(2), the sole relevant statute cited by the Government,[5] does not cure the Government's failure to plead *in rem* jurisdiction. The statute provides:

> Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District court for the District of Columbia.

---

[4] A narrow construction also avoids a substantial Article I question. Congress possesses enumerated authority "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. Congress has broader authority over U.S. vessels and U.S. nationals, as reflected in *United States v. Flores*, 289 U.S. 137 (1933), which rejected the contention that Article I's "define and punish" clause limited the separate grant of admiralty and maritime authority in a case involving the prosecution of a U.S. citizen for homicide aboard an American vessel in foreign territorial waters. Here, however, the Government seeks to use a civil forfeiture theory to justify a high-seas seizure of a vessel owned by a foreign company and alleged to be operating outside U.S. territory, without any pleaded U.S. nexus other than attenuated ownership or "source of influence" theories under 18 U.S.C. § 981(a)(1)(G)(i). Am. Compl. ¶¶ 2, 27, 47–48. The Court should therefore construe the relevant statutes not to authorize such an extraterritorial seizure absent a pleaded and provable jurisdictional predicate recognized by international law, thereby avoiding serious constitutional questions. *See INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001) (Under the constitutional-avoidance canon, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute 'is fairly possible,'" the statute should be construed "to avoid such problems.") (internal citations omitted); *see also Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.").

[5] The other statutes the Government cites are wholly inapposite. 28 U.S.C. § 2461(b) concerns admiralty cases, and this civil forfeiture action is not a suit in admiralty; similarly, 28 U.S.C. § 1333 concerns cases of "admiralty or maritime jurisdiction" and prize proceedings. 28 U.S.C. § 1345 addresses actions commenced by the United States or by Congressionally authorized agencies or officers thereof, but expressly states that such grant of jurisdiction is "[e]xcept as otherwise provided by Act of Congress," and here, Congress has enacted a more specific provision in Section 1355. Finally, 14 U.S.C. § 522(a) concerns the Coast Guard's authority to interdict, rather than the Court's power to adjudicate.

28 U.S.C. § 1355(b)(2). The high seas are not "a foreign country," and the United States is not a "foreign government."

Section 1355(d) confirms that Section 1355(b) supplies the statutory basis for exercising *in rem* jurisdiction over property subject to forfeiture beyond the ordinary territorial reach of a district court: Section 1355(d) authorizes process only where the court has jurisdiction under subsection (b). The D.C. Circuit has read the statute the same way. *See United States v. All Funds in Acct. Nos. 747.034/278, 747.009/278 & 747.714/278 in Banco Español de Crédito, Spain*, 295 F.3d 23, 26–27 (D.C. Cir. 2002) (holding that § 1355(b)(2) gives the District Court jurisdiction over property subject to forfeiture located in a foreign country). Thus, where the Government relies on § 1355(b)(2), it must plead facts bringing the defendant property within that subsection.

The Amended Complaint does not do so. Section 1355(b)(2) applies only when property subject to forfeiture is "located in a foreign country" or has been "detained or seized pursuant to legal process or competent authority of a foreign government." The *Marinera* was not located in a foreign country. It was not detained or seized by a foreign government. It was seized by the United States on the high seas. The high seas are not "a foreign country" from which one can obtain "legal process" or identify a "competent authority of a foreign government," and the United States, of course, is not a "foreign government." The Government therefore has not pleaded a statutory basis under § 1355(b)(2) for this Court to exercise *in rem* jurisdiction over the Vessel.

### C. Venue Is Independently Improper Because the Vessel Was Not Brought Into Any U.S. Judicial District

Venue fails for similar reasons. Supplemental Rule G(2)(b) requires a plaintiff to allege "grounds for . . . venue." The Government attempts to satisfy this requirement by alleging that

"[v]enue is . . . proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(2)." Am. Compl. ¶ 4. But as explained above and by its plain terms, and even assuming the statute's plain text reference to "jurisdiction" extends to "venue," as well, Section 1355(b)(2) has no application here.

It is undisputed that the *Marinera* was neither "located in a foreign country," nor was it "detained or seized pursuant to legal process or competent authority of a foreign government." Rather, the *Marinera* was seized on the high seas by the United States and is not alleged to have been located in a foreign country. *See* Am. Compl. ¶ 2; 28 U.S.C. § 1355(b)(2). Congress could have written Section 1355(b)(2) to encompass high-seas seizures by the United States but chose not to do so. This Court should not improperly expand the breadth of the statute beyond its plain meaning.

There is, in fact, a statute that establishes proper jurisdiction and venue for forfeiture proceedings with respect to vessels seized on the high seas, and it makes plain that neither is proper in this District in this case. Under 28 U.S.C. § 1355(b)(1), "[a] forfeiture action or proceeding may be brought in—(A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute." 28 U.S.C. § 1395(c), in turn, provides that "[a] civil proceeding for the forfeiture of property ***seized outside any judicial district*** may be prosecuted in ***any district into which the property is brought***" (emphases added). A vessel seized on the high seas is property seized "outside any judicial district" within the meaning of Section 1395(c). *See, e.g.*, *United States v. One 1974 Cessna Model 310R Aircraft, Serial No. 310R0203, FAA Registration No. N5083J*, 432 F. Supp. 364, 368 (D.S.C. 1977) (Section 1395(c) "properly applies procedures made outside the territorial limits of the United States, such as a seizure on the high seas").

Here, with respect to Section 1355(b)(1)(A), the Amended Complaint is devoid of any allegation that any "acts or omissions giving rise to the forfeiture occurred" in this District. Nor, for purposes of Section 1395(c), does the Amended Complaint contain any allegation regarding the district where the *Marinera* was brought. Nor may the Government cure the defect by invoking Section 1355(d). That provision authorizes process to bring property before the court only when the court has jurisdiction under subsection (b). 28 U.S.C. § 1355(d). Because the Government has not pleaded facts establishing jurisdiction under Section 1355(b), Section 1355(d) supplies no cure. Accordingly, because the Government has failed to adequately allege "grounds for . . . venue" as required by Supplemental Rule G(2)(b), the Amended Complaint must be dismissed.

### D. The Amended Complaint Fails to State Sufficiently Detailed Facts to Support a Reasonable Belief the Government Will Be Able to Meet Its Burden of Proof at Trial

On the merits, the Amended Complaint fails to meet the Government's heightened pleading burden under Supplemental Rule G(2)(f) to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). The Government's attenuated theory holds that because the *Marinera* is alleged to have transferred Iranian oil at some points in the past—and only on the basis of that fact—the vessel itself either belongs to, or "affords persons . . . sources of influence [over,] the IRGC, including the IRGC-QF" pursuant to 18 U.S.C. § 981(a)(1)(G)(i). Am. Compl. ¶ 47–48. But the Amended Complaint never explains how the *Marinera*'s alleged commercial activity transformed the *Marinera* into an IRGC or IRGC-QF asset, or how its commercial activity translated into influence over the IRGC's conduct, priorities, or terrorist operations—rather than merely into generalized revenue for the unnamed seller of those historical cargos. Moreover, the Amended Complaint pleads no facts

showing that the IRGC or IRGC-QF owned, controlled, operated, financed, or directed the *Marinera* at the time of seizure.

The statute cited by the Government, 18 U.S.C. § 981(a)(1)(G)(i), provides that property is "subject to forfeiture to the United States" if it is an asset

> of any individual, entity, or organization engaged in planning or perpetrating any Federal crime of terrorism (as defined in section 2332b(g)(5)) against the United States, citizens or residents of the United States, or their property, and all assets, foreign or domestic, affording any person a source of influence over any such entity or organization[.]

Here, the Government first asserts in conclusory fashion, absent any particularized allegations, that the *Marinera* is the "property" of the IRGC or the IRGC-QF. This is simply not the case; the *Marinera* is the property of Burevestmarin. *Compare United States v. 155 Virtual Currency Assets*, No. 20-CV-2228 (RC), 2021 WL 1340971, at *5–6 (D.D.C. Apr. 9, 2021) (Government sufficiently alleged cryptocurrency assets were forfeitable under Section 981(a)(1)(G)(i) where they were "owned, operated, promoted and/or registered by al-Q[a]eda and affiliated terrorist organizations" (citation omitted)); *United States v. FaceMaskCenter.com*, No. CV 20-2142 (RC), 2021 WL 1578294, at *1, *4–5 (D.D.C. Apr. 22, 2021) (Government sufficiently alleged website and Facebook pages were forfeitable under Section 981(a)(1)(G)(i) where they belonged to an alleged "ISIS facilitator responsible for managing select ISIS hacking operations"). That the Government also alleges that an entirely different entity, "Louis Marine," Am. Compl. ¶ 26, is the "owner" of the vessel only further undermines the Government's bald and implausible assertion that the vessel is the property of the IRGC or IRGC-QF.

Further, the Government alleges that the vessel affords "persons (including, without limitation, NIOC, IOTC, NISOC, [and Burevestmarin]) sources of influence [over] the IRGC and the IRGC-QF." Am. Compl. ¶ 48. There is little caselaw interpreting what qualifies as "affording any person a source of influence over" a terrorist organization pursuant to 18 U.S.C.

§ 981(a)(1)(G)(i), but courts have generally looked to cases applying a similar provision in the Racketeer Influenced and Corrupt Organizations Act (RICO), under which courts determine whether the property is "used to further the affairs of the enterprise" or makes "the prohibited conduct less difficult." *See United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 46 (D.D.C. 2020).

The Government has not stated sufficiently detailed facts to support a reasonable belief that it can prove at trial that the *Marinera* was, at the time of its seizure or, indeed, at *any* point, used to further the affairs of the IRGC or IRGC-QF or made any prohibited conduct less difficult. Rather, the Government alleges only that the *Marinera* loaded or delivered oil at or around Kharg Island, Iran. Am. Compl. ¶¶ 35–43. The Government offers no details about the purposes of the loading or delivering of oil, the party who benefited from the alleged activity, or any other facts that might corroborate the connection between the *Marinera* and the IRGC or IRGC-QF. The Government's broad and conclusory allegation that the *Marinera* "transport[ed] Iranian petrochemical products to generate revenue for the IRGC" (Am. Compl. ¶ 1) is not supported by details of any transactions or allegations that the *Marinera* had any dealings whatsoever with the IRGC or IRGC-QF. Nor has the Government alleged in any detail how any property or revenues connected to the *Marinera* were at the time of its seizure, or any time prior to that point, used to further the affairs of the IRGC or IRGC-QF. In sum, the Government simply argues that because the *Marinera* at certain points allegedly was loaded with oil in Iran, it is therefore a tool of the IRGC or IRGC-QF. These bald and conclusory allegations cannot satisfy the Government's heightened pleading burden under Supplemental Rule G(2)(f).

Indeed, the Government's attenuated allegation that merely transporting oil from Iranian ports renders the *Marinera* a "source of influence" over the IRGC or IRGC-QF was ***directly***

***contradicted*** by the Government's own contemporaneous actions and public pronouncements. Specifically, on March 20, 2026—the very same day the Complaint was filed—the Treasury Department's Office of Foreign Assets Control (OFAC) issued a General License under which "the sale, delivery, or offloading of crude oil or petroleum products of Iranian origin loaded on any vessel" was ***expressly authorized by OFAC*** for a period of 30 days.[6] That same day, Treasury Secretary Scott Bessent posted a statement regarding the General License on X.com, stating in part:

> Today, the Department of the Treasury is issuing a narrowly tailored, short-term authorization permitting the sale of Iranian oil currently stranded at sea.
>
> At present, sanctioned Iranian oil is being hoarded by China on the cheap. By temporarily unlocking this existing supply for the world, the United States will quickly bring approximately 140 million barrels of oil to global markets, expanding the amount of worldwide energy and helping to relieve the temporary pressures on supply caused by Iran. In essence, we will be using the Iranian barrels against Tehran to keep the price down as we continue Operation Epic Fury.[7]

Then on June 21, 2026, OFAC issued an additional General License under which "all transactions . . . . ordinarily incident and necessary to the production, sale, delivery, or offloading of crude oil, petrochemical products, or petroleum products of Iranian origin" were expressly authorized by OFAC for a period of 60 days.[8] That license was revoked on July 7, 2026.[9]

---

[6] Office of Foreign Assets Control, General License U, Authorizing the Delivery and Sale of Crude Oil and Petroleum Products of Iranian-Origin Loaded on Vessels as of March 20, 2026, https://ofac.treasury.gov/media/935376/download?inline.

[7] Scott Bessent, X, Mar. 20, 2026 (7:10PM), https://x.com/SecScottBessent/status/2035131840604881359.

[8] Office of Foreign Assets Control, General License X, Authorizing the Production, Delivery and Sale of Crude Oil, Petrochemical Products, and Petroleum Products of Iranian-Origin through August 21, 2026 (June 21, 2026) https://ofac.treasury.gov/media/936206/download?inline.

[9] Office of Foreign Assets Control, General License X1, Revocation and Wind Down of June 21, 2026 Authorization for the Production, Delivery and Sale of Crude Oil, Petrochemical Products, and Petroleum Products of Iranian Origin (July 7, 2026), https://ofac.treasury.gov/media/936446/download?inline.

If mere transportation and sale of oil of Iranian origin constituted in itself a "source of influence" over the IRGC or IRGC-QF, as the Government contends in this proceeding, then OFAC's March 20 and June 21 General Licenses ***would be illegal*** under 18 U.S.C. § 2232(b), which prohibits the transfer of property "subject to the in rem jurisdiction of a United States court for purposes of civil forfeiture"; and would impermissibly legalize "[p]roviding material support or resources to designated foreign terrorist organizations" pursuant to 18 U.S.C. § 2339B. *See* 18 U.S.C. § 2232(b); 18 U.S.C. § 2339B. The United States, through an Executive Branch licensing decision, cannot lawfully have authorized the provision of material support to designated Foreign Terrorist Organizations in violation of these statutes, nor has the Government ever cited any authority that would permit it to do so. Accordingly, while the Government asserts in this case that loading oil in Iran is, *ipso facto*, sufficient reason to seize the *Marinera*, the Executive Branch itself has made clear that the mere act of transporting oil of Iranian origin ***cannot*** on its own constitute a "source of influence" over the IRGC or IRGC-QF pursuant to 18 U.S.C. § 981(a)(1)(G)(i). If the Court were to accept the Government's bare allegations in this case as sufficient to constitute seizure, it would necessarily constitute a finding that actions taken by the U.S. Treasury Department—and by every private party who operated under the auspices of that license—were illegal. That cannot be what the Government intended in its recent licensing actions, and the proper route for reconciling this situation is to acknowledge that the Government's allegations rely on a faulty and unsupported leap in logic—a premise recently rejected by the very Executive Branch that is pursuing this action. This Court can and should reject the Government's illegal and unfounded proposed forfeiture of the *Marinera*.[10]

[10] Although the General Licenses at issue do not expressly seek to supersede statutory material support prohibitions, any implied "carve out" for material support violations would *only* be meaningful if abiding by the terms of the license (that, is transporting Iranian oil) is not *in itself* a violation of those material support statutes (as the Amended Complaint would have it be). Thus, the General License *can* be reconciled with the material support statutes, but not without

Finally, even if mere transportation and sale of oil of Iranian origin ***were*** sufficient to constitute a "source of influence" over the IRGC or IRGC-QF—which it is not—the Amended Complaint still fails to satisfy 18 U.S.C. § 981(a)(1)(G)(i)'s requirement that the defendant property be an asset "affording any person a source of influence over" a terrorist organization. 18 U.S.C. § 981(a)(1)(G)(i). Congress chose the present tense—"affording"—which strongly suggests the statute targets assets that provide such influence as of the relevant time, not assets that may have done so at some indeterminate point in the past. *See Carr v. United States*, 560 U.S. 438, 448–49 (2010) (relying on Congress's use of the present tense to reject an interpretation that would sweep in prior conduct; noting that the Dictionary Act's "present tense include[s] the future" implies that "the present tense generally does not include the past"); *Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011) (same). The Government therefore must allege—with the specificity Rule G requires—facts showing that, as of the vessel's seizure (or other pleaded "act giving rise to forfeiture"), the *Marinera* was functioning as an asset that afforded anyone a "source of influence" over the IRGC or IRGC-QF. *See* 18 U.S.C. § 981(a)(1)(G)(i), (f). The Amended Complaint does not do so: it alleges only past port calls, without pleading facts plausibly connecting the *Marinera*'s status at the time of seizure to any ***current*** (or continuing) "source of influence" over the IRGC or IRGC-QF. The Amended Complaint alleges historical carriage of Iranian oil. It does not allege facts showing that the vessel itself gave any person present influence over the IRGC or IRGC-QF. The Government cannot show that, at the time of seizure, the

acknowledging that the pleadings in this case are insufficient as a plausible allegation of material support. The Government needs to choose: its allegations are faulty or the Administration's actions in response to the conflict in Iran have been in violation of law. To date the Government has denied the latter while failing to acknowledge the former.

*Marinera* was a "source of influence" because it is undisputed that, at the time of seizure, the *Marinera* was devoid of cargo.[11]

For all of the above reasons, the Government has failed to meet its heightened pleading burden, and the Amended Complaint is subject to dismissal on the merits.

## V. CONCLUSION

The Amended Complaint fails to adequately allege *in rem* jurisdiction, venue, or the merits of its civil forfeiture claim against the *Marinera*. Accordingly, Burevestmarin respectfully requests that the Court dismiss the Amended Complaint with respect to the *Marinera*.

Dated: October 13, 2026

Respectfully Submitted,

*/s/ Michael J. Baratz*

Michael J. Baratz, D.C. Bar No. 480607
**Steptoe LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
mbaratz@steptoe.com

Andrew C. Adams, N.Y. Bar No. 4727293
**Steptoe LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
acadams@steptoe.com
Admitted *pro hac vice*

*Attorneys for Claimant Burevestmarin LLC*

[11] In *United States v. All Petroleum-Product Cargo Onboard M/T Arina*, 173 F.4th 342, 346–47 (D.C. Cir. 2026), the D.C. Circuit held that under Section 981(f), title to property subject to forfeiture may vest upon commission of the act giving rise to forfeiture, and therefore rejected a timing-based challenge to the Government's theory that the property at issue constituted "assets of" an FTO. But *Arina* expressly declined to address the statute's alternative "source of influence" theory. *Id.* at 350. Moreover, the *Arina* opinion did not confront the issue of whether the language of Section 981(f)—which retroactively provides for forfeiture based on the "commission" of an "act"—can apply to those provisions of Section 981(a) that provide for forfeiture without reference to the commission of an act. Section 981(a)(1)(G)(i) is such a provision, basing forfeiture on a status (i.e., property being among the assets that afford a person a source of influence) rather than on the commission of any specified act. Burevestmarin therefore preserves the position that the "affording . . . a source of influence" prong should not be treated as coextensive with the separate "assets of" prong.