**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOTOR TANKER *BELLA 1* BEARING INTERNATIONAL MARITIME NUMBER 9230880,<br><br>Defendant,<br><br>BUREVESTMARIN LLC,<br><br>Claimant. | Civil Action No. 1:26-00992 (RBW)(ZMF) |

**CLAIMANT BUREVESTMARIN LLC'S EMERGENCY MOTION TO PRESERVE THE *STATUS QUO*, ISSUE AN ORDER TO SHOW CAUSE, AND AUTHORIZE ANCILLARY PROCESS**

**TABLE OF CONTENTS**

I. INTRODUCTION .......... 1
II. FACTUAL BACKGROUND .......... 3
III. ARGUMENT .......... 7
A. Supplemental Rule G Authorizes Preservation, and Rule G(1) Incorporates Rule C(5)'s Show-Cause Process .......... 7
B. Rule 4.1 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1355(d) Authorize Service of Ancillary Process on GMS in Maryland .......... 9
C. Injunctive Relief Is Necessary and Appropriate to Preserve the *Status Quo* Under 28 U.S.C. § 1651 .......... 11
D. Temporary *Status Quo* Relief Is Necessary to Prevent Irreparable Harm .......... 12
E. The Requested Relief Is Narrow and Does Not Require the Court to Decide Final Title 17
F. A Nominal Bond Is Appropriate .......... 21
IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Associated Press v. Budowich*,
780 F. Supp. 3d 32 (D.D.C. 2025) .....22

*Astrazeneca Pharms. LP v. Burwell*,
197 F. Supp. 3d 53 (D.D.C. 2016) .....12

*The Bella*, 270 F. 287 (D.N.J. 1920) .....16, 20

*Berger v. Zeghibe*,
666 F. App'x 119 (3d Cir. 2016) .....12

*Bldg. Trades Unions v. Dep't of Def.*,
783 F. Supp. 3d 290 (D.D.C. 2025) .....22

*Catalytic, Inc. v. Monmouth & Ocean Cnty. Bldg. Trades Council*,
829 F.2d 430 (3d Cir. 1987) .....12

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
254 F.3d 882 (9th Cir. 2001) .....9

*Ctr. for Sci. in the Pub. Int. v. Regan*,
727 F.2d 1161 (D.C. Cir. 1984) .....16

*Delaware & H. Ry. Co. v. United Transp. Union*,
450 F.2d 603 (D.C. Cir. 1971) .....16

*District of Columbia v. Vinyard*,
901 F. Supp. 2d 77 (D.D.C. 2012) .....22

*DSE, Inc. v. United States*,
169 F.3d 21 (D.C. Cir. 1999) .....22

*The East Hampton*, 48 F.2d 542 (2d Cir. 1931) .....13

*Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*,
636 F.2d 755 (D.C. Cir. 1980) .....22

*FTC v. Dean Foods Co.*,
384 U.S. 597 (1966) .....15, 20

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .....13, 16

*LeBlanc v. United States Priv. & C.L. Oversight Bd.*,
784 F. Supp. 3d 1 (D.D.C. 2025)....................................15

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)....................................16

*Nat. Res. Def. Council, Inc. v. Morton*,
337 F. Supp. 167 (D.D.C. 1971)....................................22

*New v. Yacht Relaxin*,
212 F. Supp. 703 (S.D. Cal. 1962)....................................14

*Phang v. Blanche*,
836 F. Supp. 3d 90 (D.D.C. 2026)....................................22

*Matter of RE Palm Springs II, L.L.C.*,
65 F.4th 752 (5th Cir. 2023)....................................11

*See Application of President & Directors of Georgetown Coll., Inc.*, 331 F.2d
1000 (D.C. Cir. 1964)....................................12

*State of Fla., Dep't of State v. Treasure Salvors, Inc.*,
621 F.2d 1340 (5th Cir. 1980), *aff'd in part & rev'd in part*, 458 U.S. 670
(1982)....................................9, 18

*Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan*,
890 F. Supp. 552 (N.D. Miss. 1995) (following *Treasure Salvors*)....................................10

*In re TMT Procurement Corp.*,
764 F.3d 512 (5th Cir. 2014)....................................11

*United States v. All Assets Held at Bank Julius Baer & Co.*,
309 F.R.D. 1 (D.D.C. 2015)....................................19

*United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*,
45 F.4th 426 (D.C. Cir. 2022)....................................7, 12

*United States v. All USD Tether Held in Cryptocurrency Addresses*,
No. 26-CV-8010 (JPO), 2026 WL 3151952 (S.D.N.Y. Oct. 21, 2026)....................................12

*United States v. Esposito*,
970 F.2d 1156 (2d Cir. 1992)....................................15

*United States v. Motor Tanker Skipper*,
No. 26-697 (CJN) (D.D.C. Mar. 24, 2026)....................................3, 14

*United States v. Steel Tank Barge H 1651*,
272 F. Supp. 658 (E.D. La. 1967)....................................13

*United States v. Two Gen. Elec. Aircraft Engines*,
317 F. Supp. 3d 516 (D.D.C. 2018) .......... 14

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947). .......... 11

*W. Bulk Carriers (Australia) Pty. Ltd. v. P.S. Int'l, Inc.*,
164 B.R. 616 (S.D. Ind. 1994) .......... 18

*The Whippoorwill*, 52 F.2d 985 (D. Md. 1931) .......... 15, 20

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .......... 1, 2, 5, 13

**Statutes**

18 U.S.C. § 981(a)(1)(G)(i) .......... 3

28 U.S.C. § 1355(d) .......... 2, 9, 10

28 U.S.C. § 1651 .......... 11, 12

**Rules**

Civ. Local R. 65.1 .......... 1

Fed. R. Civ. P. 4.1 .......... 2, 9, 11, 18

Fed. R. Civ. P. 54(b) .......... 9

Fed. R. Civ. P. 65 .......... 2, 12, 13, 21

Fed. R. Civ. P. 65(c) .......... 21, 22

Fed. R. Civ. P. 65(d)(2) .......... 12

Suppl. R. C(3)(c) .......... 18

Suppl. R. C(5) .......... 1, 2, 7, 8, 9, 10, 18, 19, 23

Suppl. R. G(1) .......... 2, 7, 8, 19

Suppl. R. G(7)(a) .......... 1, 2, 7, 12, 21

Suppl. R. G(7)(b) .......... 1, 3, 8, 10, 21

Pursuant to Supplemental Rule G(7)(a), Supplemental Rule C(5), Federal Rule of Civil Procedure 65, Civil Local Rule 65.1, and the All Writs Act, 28 U.S.C. § 1651, Claimant Burevestmarin LLC hereby moves the Court to enter a proposed temporary *status quo* order, issue ancillary process, and set an expedited show-cause hearing as described in the attached proposed order to show cause.

In support of this motion, Burevestmarin relies upon the memorandum of points and authorities included herein and the accompanying declarations.

## I. INTRODUCTION

Burevestmarin seeks narrow, emergency relief to preserve the defendant *res* and this Court's ability to decide whether the Government's sealed interlocutory sale can stand—and whether this Court had jurisdiction and venue in the first place. The Government obtained a sale order while this action was under seal and without notice to Burevestmarin, even though the original complaint identified Burevestmarin as the Vessel's claimed owner. The Government then sold the Vessel to Global Marketing Systems, Inc. ("GMS") for demolition. The Government now says it no longer controls the Vessel. According to the best information currently available, the Vessel was most recently traveling off the coast of Sri Lanka and is at imminent risk of proceeding to Bangladesh or India for demolition. Unless the Court acts promptly, the Vessel may be beached, cut, dismantled, or recycled before the Court can adjudicate Burevestmarin's pending challenge to the Sale Order.

That posture raises the concerns the Court identified at the October 6 conference—whether effective relief remains available now that the Vessel has been sold to a third-party purchaser and the Government says the proceeds are the substitute *res*. It does. While Rule G(7)(b)(iv) makes sale proceeds a substitute *res*, it does not strip the Court of authority to review its interlocutory Sale Order or preserve the original Vessel while the validity of the sale process

and this Court's jurisdiction is tested. Nor is GMS beyond reach. GMS has an agent for service of process in Maryland, and Rule 4.1 of the Federal Rules of Civil Procedure together with 28 U.S.C. § 1355(d) provides the procedure for serving ancillary process on GMS through that agent.

The Federal Rules and federal law authorize the Court to issue relief to preserve the Vessel. Rule G(7)(a) authorizes preservation of defendant property when the Government lacks actual possession. Rule G(1) incorporates Rule C(5), which provides the ancillary show-cause mechanism where property subject to an *in rem* action has been removed or sold or where property or proceeds are controlled by a person not yet before the Court. The All Writs Act also permits the Court to exercise its equitable power to grant relief to preserve the *status quo* while it determines its jurisdiction. Finally, Rule 65 separately authorizes immediate *status quo* relief. Burevestmarin therefore asks for a show-cause process and preservation of the *res* pending that process.

Contrary to its assertions, the Government is not powerless to prevent destruction of the *res*. The Vessel remains blocked property; GMS's ability to purchase, transfer, scrap, or recycle the Vessel depends on, among other formalities, OFAC authorization. If those authorizations exist, the Government can identify them, produce them, and suspend them, or in the alternative, notify any authorization recipient of the Court's *status quo* order and take all reasonable steps within its authority to prevent reliance on any such authorization pending a show-cause hearing. If they do not exist, then the sale and any downstream transfer raise still more questions. Either way, the Government cannot both carry out a sealed sale process to place the Vessel in GMS's hands and then disclaim all ability to preserve the *res* long enough to permit judicial review.

Specifically, Burevestmarin asks the Court to require the Government to identify GMS and any other person known to control the Vessel; authorize prompt service of an order to show cause; require GMS and any other controller to show cause why the Vessel should not be preserved pending adjudication of the Sale Order's validity; require production of the sale, payment, OFAC/Treasury, DOJ, title, registry, and control documents; and temporarily restrain any beaching, scrapping, cutting, dismantling, recycling, transfer, reflagging, encumbrance, relocation, or disposition of the Vessel.

The requested relief is temporary, narrowly tailored, and practical. If the Vessel is preserved, all parties can be heard and the Court can decide whether the sale process was valid. If the Vessel is scrapped, the original *res* will be irreparably destroyed, and meaningful review of the Sale Order will be mooted. The Court should therefore enter the proposed temporary *status quo* order, issue ancillary process, and set an expedited show-cause hearing. A proposed show cause order is attached to these papers.

## II. FACTUAL BACKGROUND

The United States filed this civil forfeiture action under seal on March 20, 2026, against the Motor Tanker *Bella 1*, IMO 9230880, later known as the *Marinera* and now publicly reported as the *Era* (the "*Marinera*" or the "Vessel"). The Government alleged that the Vessel was subject to forfeiture under 18 U.S.C. § 981(a)(1)(G)(i). The original complaint identified Burevestmarin LLC as the Vessel's claimed owner, alleging that Burevestmarin "purports" to own the Vessel. Compl. at 11 n.3. The Government did not give Burevestmarin notice of the filing.

Six days later, on March 26, while the case remained sealed, the Government moved for an interlocutory sale of the Vessel under Supplemental Rule G(7)(b). ECF No. 3. That timing is significant: two days earlier, in a parallel tanker forfeiture action in this District, an interlocutory

sale order for the *Skipper* was stayed after claimants received notice and objected. *See* Minute Order, *United States v. Motor Tanker Skipper*, No. 26-697 (CJN) (D.D.C. Mar. 24, 2026) ("*Skipper*"). Judge Nichols extended the stay three days later after another claimant appeared and moved to reconsider, modify, or set aside that order. *See* Minute Order, *Skipper*, No. 26-697 (CJN) (D.D.C. Mar. 27, 2026). The Government therefore knew when it sought interlocutory sale here that notice to claimants could halt a tanker sale. It nevertheless moved for sale in this sealed case without direct notice to Burevestmarin, a known ownership claimant, and now invokes the completed sale as a reason the Court should not preserve the Vessel.[1]

Burevestmarin did not receive notice of the sale motion. It therefore had no opportunity to oppose sale, contest valuation, offer substitute security, propose custody arrangements, challenge subject-matter jurisdiction, challenge *in rem* jurisdiction, challenge venue, or seek release of the Vessel before disposition.

On April 24, 2026, the Court entered the Government's proposed interlocutory sale order. ECF No. 8. Four days later, on April 28, 2026, the Clerk issued the warrant for arrest *in rem*. ECF No. 9. The Court therefore authorized an interlocutory sale *before* the formal civil arrest process in this forfeiture action issued and before Burevestmarin had an opportunity to appear. The Government later filed an accounting reporting that the Vessel had been sold for $9.1

[1] At the October 6 conference, the Government suggested that proceeding under seal was justified in part because the *Marinera* captain "has said that Burevest instructed him to flee" and because "Burevest had instructed the captain to flee." Tr. 7:6–7, 14:6–7; *see also* Tr. 15:3–7. After conferring with counsel for the captain, Burevestmarin advised the Government that the captain had never referred to Burevestmarin, "Burevest Marine LLC," or "Burevest" in any Government interview, and that the Government had not asked him about any such entity. Burevestmarin asked the Government to correct the record and produce the interview notes referenced at the hearing. The Government responded that it was reviewing the issue and would address it with the Court if discrepancies were found. As of this filing, the Government has not corrected the record or produced the referenced notes.

million and a declaration confirming that purchaser was Global Marketing Systems, Inc. ("GMS"). ECF Nos. 13, 28-1. Public reporting describes GMS as a buyer of ships and offshore vessels for recycling. The Government has represented that sale proceeds are in its custody and constitute substitute *res*.

The case remained sealed until August 5, 2026. After learning of the action and the sale, Burevestmarin promptly filed a verified claim and moved to reconsider, modify, stay, or set aside the Sale Order. Burevestmarin's challenge raises threshold issues of jurisdiction, venue, notice, and the validity of the sealed sale process.

At the October 6, 2026 status conference, the Court expressed concern about what authority remained over the original *res* after a sale to a third party and while the Vessel remained outside the United States. The Court also directed the Government to report when the Vessel would arrive for scrapping.

On October 7, 2026, the Government filed a notice stating that, "to the Government's best knowledge," the Vessel was expected to arrive at a "salvage/scrapping shipyard" on or about October 15, 2026. ECF No. 23. The Government further stated that it "does not know how quickly salvage/scrapping operations will begin" after arrival. *Id.*

That notice created the present emergency. According to Burevestmarin's shipbreaking expert, once a vessel slated for demolition arrives at or near Chattogram and the necessary boarding, customs, port, payment, and beaching-permission steps are completed, there is an immediate practical risk that the vessel can be physically delivered and beached within approximately 48 hours. *See* Chowdhury Decl. ¶ 14. Once the Vessel is beached, cut, or dismantled, it cannot practically be restored as an operating tanker or preserved in its original condition. *Id.* ¶¶ 17–18.

As of October 23, 2026 at 3:30 p.m. EST, the best information available to Burevestmarin is that the Vessel was most recently traveling off the coast of Sri Lanka. While the most recent public records indicate the Vessel was navigating toward Chattogram, Bangladesh, the Vessel's transponder has apparently been shut off and has not broadcast its location since October 21, 2026 at 8:05 a.m. UCT.[2] The Government represented to the Court at the hearing on October 6 that the Vessel was being taken to a Bangladesh for scrapping, Oct. 6 H'g Tr. 10:12, 11:1, 36:20–37:1, but subsequently submitted a declaration on October 20, 2026 that the Vessel was "currently undergoing cleaning of solid sludge from its tanks prior to completion of remaining salvage operations at the recycling yard in ***India***." ECF No. 28-1 ¶ 3 (emphasis added). When asked by Burevestmarin's counsel to explain this inconsistency, the Government stated that the October 20 declaration "represents the Government's best and latest knowledge" and simply denied there was any inconsistency. As of today, the Vessel has not been declared to the Chattogram Port Authority and has not appeared on the Chattogram demolition list. *See* Chowdhury Decl. ¶ 13. Burevestmarin will supplement the record promptly if further vessel-status information becomes available.

Burevestmarin tried to avoid emergency motion practice. After the October 6 conference, it asked the Government to confirm the Vessel's destination, identify any license or authorization permitting transfer or scrapping, and agree to a short standstill while the pending motions are under review. The Government refused. It stated that it does not control the Vessel and therefore cannot agree to preserve its status or movement. That refusal makes court intervention necessary. If the Government no longer controls the Vessel, then the Court should require the

---

[2] *See ERA*, MarineTraffic, https://www.marinetraffic.com/en/ais/details/ships/shipid:711469 (last accessed Oct. 23, 2026).

Government to identify who does, authorize prompt service on those persons, and require them to show cause before the Vessel is destroyed.

Burevestmarin therefore seeks narrow emergency relief. It does not ask the Court to decide final title, forfeiture, ownership, or the ultimate effect of the Sale Order on this motion. It asks only that the Court preserve the *status quo*; require the Government to identify and notify GMS and any other person controlling the Vessel; identify, produce, and suspend any OFAC authorizations that would permit the transfer, scrapping, or recycling of the Vessel, or in the alternative, notify any authorization recipient of the Court's *status quo* order and take all reasonable steps within its authority to prevent reliance on any such authorization pending a show-cause hearing; require GMS and any other controller to show cause; preserve the Vessel pending that process; and prevent irreversible destruction of the original *res* while the Court determines whether the Sale Order can stand.

## III. ARGUMENT

### A. Supplemental Rule G Authorizes Preservation, and Rule G(1) Incorporates Rule C(5)'s Show-Cause Process

Supplemental Rule G supplies the governing civil forfeiture framework. Rule G(7)(a) provides that, "[w]hen the government does not have actual possession of the defendant property," the Court may enter "any order necessary to preserve the property" and prevent its "removal or encumbrance." Supp. R. G(7)(a). That is this case. The Government says it no longer controls the Vessel, but that does not render the Court powerless. Rule G expressly addresses the circumstance in which the Government lacks possession, authorizing preservation orders to prevent the defendant property from being removed, encumbered, or otherwise placed beyond meaningful relief. *See United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 432–34 (D.C. Cir. 2022).

Rule G also incorporates Supplemental Rule C, which permits the Court to issue ancillary process through a show-cause order to any entity in possession of the property to explain why it should not be delivered to the Court. Rule G(1) provides that, "[t]o the extent that [Rule G] does not address an issue," Supplemental Rules C and E and the Civil Rules apply. Supp. R. G(1). Rule C(5) then addresses the precise gap presented by property that has been removed or sold. It provides that, where property subject to an *in rem* action "has not been brought within the control of the court because it has been removed or sold," or where property or proceeds are in the hands of a person not served with process, the Court may order "any person having possession or control of such property or its proceeds to show cause why it should not be delivered into the custody of the marshal . . . or paid into court to abide the judgment." Supp. R. C(5).

That process addresses the Court's concerns here regarding the Vessel being in the possession of a third party. The Vessel is the defendant *res* in this civil forfeiture action. The Government obtained a sealed Sale Order and later reported that the Vessel had been sold to GMS. Neither GMS nor any GMS affiliate or agent, any vessel manager, local buyer, port agent, recycling yard, registry, insurer, classification society, or other person exercising control over the Vessel is yet before the Court. Rule G(1) and Rule C(5) allow the Court to require those persons to show cause before the Vessel is destroyed.

Nor does Rule G(7)(b)(iv)'s substitute-*res* provision strip the Court of authority to act. To be sure, Rule G(7)(b)(iv) provides that sale proceeds are "a substitute res subject to forfeiture in place of the property that was sold." Supp. R. G(7)(b)(iv). But that provision does not say that the Court loses authority to review its own jurisdiction, review its own interlocutory Sale Order, preserve the original *res*, require disclosure of the sale record, or issue ancillary process to

persons controlling sold or removed property while the Sale Order's validity is adjudicated. No such limitation appears in Rule G. And Rule C(5) would serve little purpose if a sale itself defeated the Court's ability to require the holder of sold property to show cause.

The Court also retains authority over its own interlocutory order. A sale order entered before final judgment remains subject to revision before final judgment under Rule 54(b) and the Court's inherent authority. *See* Fed. R. Civ. P. 54(b); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885–86 (9th Cir. 2001). The sale therefore did not immunize the Sale Order from review. Nor did the sale divest the Court of all *in rem* authority.

Burevestmarin does not ask the Court to divest GMS of title or finally unwind the sale on an emergency record. It asks only that the Court preserve the Vessel, require the Government to disclose the sale and authorization record and suspend any OFAC authorizations that would permit the transfer, scrapping, or recycling of the Vessel, authorize service on GMS, and require GMS and any other controller to show cause before the original res is irreversibly destroyed. That interim process protects the Court's ability to decide whether the sealed Sale Order can stand.

### B. Rule 4.1 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1355(d) Authorize Service of Ancillary Process on GMS in Maryland

Rule 4.1(a) provides that process other than a summons or subpoena "must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose." Fed. R. Civ. P. 4.1(a). It further provides that such process may be served "anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits." *Id*. The ancillary process and show cause order authorized by Supplemental Rule C(5) is precisely the type of "other process" contemplated by Rule 4.1. *See State of Fla., Dep't of State v. Treasure Salvors, Inc.*, 621 F.2d 1340, 1347–48 (5th Cir. 1980)

(Supplemental Rule C(5) ancillary process "does not require the seizure of property" and is governed by the general service-of-process rule rather than the *in rem* seizure provision), *aff'd in part & rev'd in part*, 458 U.S. 670 (1982); *Stewart & Stevenson Servs., Inc. v. M/V Chris Way MacMillan*, 890 F. Supp. 552, 565 (N.D. Miss. 1995) (following *Treasure Salvors*).

Section 1355(d) supplies that federal authorization here. It provides that "[a]ny court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action." 28 U.S.C. § 1355(d).[3] Burevestmarin seeks an order requiring GMS and any other person with possession or control of the Vessel to show cause why the Vessel should not be preserved, delivered into custody, or paid into Court pending adjudication of the Sale Order's validity. *See* Supp. R. C(5), G(1), G(7)(a).

That process may be served on GMS in Maryland. Public information and the record indicate that GMS is the purchaser or an entity involved in the Vessel's transfer for recycling.[4] Public records further indicate that GMS has a current Maryland resident agent or other authorized agent.[5] Thus, Rule 4.1 and § 1355(d) permit this Court to authorize service of ancillary forfeiture process on that agent in Maryland. The Court should therefore appoint

---

[3] Burevestmarin invokes § 1355(d) only as a process mechanism to preserve the *status quo* and bring controllers before the Court while the Court addresses Burevestmarin's jurisdictional and venue objections. Nothing in this request concedes that the Court had or has subject-matter jurisdiction, *in rem* jurisdiction, or venue, including but not limited to under § 1355.

[4] *See* ECF No. 23; Oct. 6 H'g Tr. 10:24–11:1; *US sells for scrap two sanctioned oil tankers seized after Venezuela raid*, Reuters (Aug. 10, 2026), https://www.reuters.com/business/energy/us-sells-scrap-two-sanctioned-oil-tankers-seized-after-venezuela-raid-2026-08-10/; *see About Us: Overview*, GMS, https://www.gmsinc.net/about-us (last accessed Oct. 22, 2026).

[5] Ex. 3 (Global Marketing Systems, Inc.: D03403946, Maryland Business Express – Business Search Results).

Capital Process Servers or another appropriate process server to serve GMS through its current Maryland agent and to file proof of service under Rule 4(l), as incorporated by Rule 4.1(a).

GMS cannot avoid ancillary process merely by asserting that it is a good-faith purchaser. A purchaser's good-faith status is a merits issue, not a threshold bar to service, appearance, or a show-cause order. A purchaser bears the burden of establishing good faith and that good faith is defeated by notice of an adverse ownership claim, as distinct from mere knowledge of objections to a transaction. *See In re TMT Procurement Corp.*, 764 F.3d 512, 521–22 (5th Cir. 2014); *Matter of RE Palm Springs II, L.L.C.*, 65 F.4th 752, 759–61 (5th Cir. 2023). Here, the Complaint as well as publicly available records identified Burevestmarin's claim of ownership; the sale proceeded under seal without direct notice to Burevestmarin; and the Vessel remained blocked property. Those facts at least require GMS to appear and show cause before the Vessel is irreversibly destroyed.

### C. Injunctive Relief Is Necessary and Appropriate to Preserve the *Status Quo* Under 28 U.S.C. § 1651

Given the extraordinary nature of the Government's conduct in this case, this Court should exercise its equitable power under the All Writs Act, 28 U.S.C. § 1651, by granting this motion to preserve its jurisdiction and maintain the *status quo* pending further proceedings. The All Writs Act empowers this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[]." 28 U.S.C. § 1651. To that end, the Supreme Court has long recognized that a federal court "unquestionably ha[s] the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947).

Courts have applied the Act to grant injunctive relief where the requesting party has no other adequate remedy at law and injunctive relief is necessary for the proper administration of

justice. *See Application of President & Directors of Georgetown Coll., Inc.*, 331 F.2d 1000, 1007–10 (D.C. Cir. 1964) (granting temporary injunctive relief under 28 U.S.C. § 1651); *Astrazeneca Pharms. LP v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016) (same). Further, courts have held that the All Writs Act empowers federal courts to enjoin nonparties to enforce orders in civil cases. *See, e.g.*, *Catalytic, Inc. v. Monmouth & Ocean Cnty. Bldg. Trades Council,* 829 F.2d 430, 434 (3d Cir. 1987); *Berger v. Zeghibe*, 666 F. App'x 119, 123 (3d Cir. 2016) (The expansive power under the All Writs Act extends to any individuals or entities who "are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." (citations and internal quotation marks omitted)).

Here, the Government's conduct has left Burevestmarin with no other adequate remedy at law. Because the Government's sale motion and the Sale Order proceeded under seal, Burevestmarin had no practical opportunity to oppose the sale, contest valuation, offer substitute security, propose custody arrangements, challenge venue, challenge in rem jurisdiction, or seek release before the Government transferred the Vessel. Burevestmarin will suffer irreparable harm absent emergency relief that cannot be undone by later briefing, a later merits ruling, or an award of proceeds. Accordingly, the Court should exercise its equitable jurisdiction under 28 U.S.C. § 1651 and grant injunctive relief to preserve the Vessel.

### D. Temporary *Status Quo* Relief Is Necessary to Prevent Irreparable Harm

While Supplemental Rule G(7)(a) supplies forfeiture-specific preservation authority independent of Rule 65,[6] Burevestmarin also satisfies the standards for temporary *status quo* relief under Rule 65 of the Federal Rules of Civil Procedure.

[6] Rule G(7)(a) provides that, when the Government does not have actual possession of defendant property, the Court may enter "any order necessary to preserve the property" or prevent its

Under Rule 65, a party seeking emergency injunctive relief must show a likelihood of success on the merits, irreparable harm, that the balance of equities favors relief, and that the public interest supports relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). Those factors are more than satisfied here. At minimum, Burevestmarin has raised substantial questions going to the validity of the sealed Sale Order, the adequacy of notice to a known ownership claimant, this Court's jurisdiction and venue, and the availability of meaningful relief if the original *res* is destroyed before those issues can be heard.

Burevestmarin is likely to succeed, or at least has raised substantial questions, on its challenge to the Sale Order. The Government sought and obtained the Sale Order while this action remained sealed and without giving direct notice to a claimant identified in the Government's own complaint as the Vessel's claimed owner. That is not a technical defect; it goes to the validity of the sale process itself. Courts have set aside interlocutory vessel sales where a known owner or interested party lacked adequate notice before sale. *See United States v. Steel Tank Barge H 1651*, 272 F. Supp. 658, 663–64 (E.D. La. 1967);[7] *The East Hampton*, 48

---

removal or encumbrance, Supp. R. G(7)(a), and the D.C. Circuit has recognized that the Supplemental Rules and civil-forfeiture preservation authority permit orders preserving defendant property notwithstanding ordinary Rule 65(d)(2) nonparty limitations that would otherwise apply in a civil injunction case. *See All Assets Held at Credit Suisse (Guernsey)*, 45 F.4th at 433–34; *see also, e.g.*, *United States v. All USD Tether Held in Cryptocurrency Addresses*, No. 26-CV-8010 (JPO), 2026 WL 3151952, at *3 (S.D.N.Y. Oct. 21, 2026) (granting temporary restraining order pursuant to Rule G(7)(a) barring third party with possession of the *res* from "dissipat[ing], encumber[ing], or transferr[ing the *res*] in a way that renders [it] unavailable").

[7] *Steel Tank Barge* turned on its particular facts, including that the Government knew the claimant's identity and that several circumstances combined to make publication and seizure inadequate notice. 272 F. Supp. at 663–64. Burevestmarin relies on the case for that due-process principle, not because the facts are identical. Here, the sealed-sale posture strengthens the notice

F.2d 542, 545 (2d Cir. 1931); *New v. Yacht Relaxin*, 212 F. Supp. 703, 705–06 (S.D. Cal. 1962). Those cases reflect the settled principle that a known claimant should not lose property through a judicial sale conducted without a meaningful opportunity to be heard.

The notice problem is especially acute here. In ordinary vessel cases, seizure may alert interested parties that an *in rem* proceeding exists. But here the Government's sale motion and the Sale Order proceeded under seal. Burevestmarin therefore had no practical opportunity to oppose sale, contest valuation, offer substitute security, propose custody arrangements, challenge venue, challenge *in rem* jurisdiction, or seek release before the Government transferred the Vessel. The Government's decision to proceed under seal also matters because, in the related *Skipper* forfeiture case, notice to claimants had already halted sale of the vessel before disposition.[8] This Court should not permit the Government to rely on the consequences of that sealed process as a reason to deny preservation now.

Burevestmarin will suffer irreparable harm absent emergency relief. The Government has reported that the Vessel was expected to arrive at a salvage or scrapping yard on or about October 15, 2026, and that it did not know how quickly scrapping operations would begin after arrival. ECF No. 23. Once the Vessel is beached, cut, dismantled, or recycled, the original *res* will be destroyed. *See* Chowdhury Decl. ¶¶ 17–18; *see also United States v. Two Gen. Elec. Aircraft Engines*, 317 F. Supp. 3d 516, 520–21 (D.D.C. 2018) (destruction of defendant property in a civil *in rem* forfeiture action deprived the United States of its property interest in the *res* and in litigating its claim). That harm cannot be undone by later briefing, a later merits ruling, or an

---

problem because the public seizure of the Vessel did not give Burevestmarin notice that the Government was seeking a judicial sale under seal.

[8] *See* Minute Order, *Skipper*, No. 26-697 (CJN) (D.D.C. Mar. 24, 2026); Minute Order, *Skipper*, No. 26-697 (CJN) (D.D.C. Mar. 27, 2026).

award of proceeds. *See FTC v. Dean Foods Co.*, 384 U.S. 597, 599–600, 603–05 (1966) (authorizing interim relief to preserve meaningful review where the *res* would otherwise vanish and effective final relief would become "virtually impossible"). The physical Vessel is the property Burevestmarin contends was improperly sold without notice, and destruction of that property would eliminate the very subject of Burevestmarin's challenge to the Sale Order.

The substitute proceeds do not eliminate irreparable harm. First, the Vessel has been sold for scrap at substantially below its true market value—indeed, the purchase price was substantially less than Burevestmarin paid for the Vessel in December 2025—so the substitute proceeds are inadequate to compensate Burevestmarin. Second, Burevestmarin does not merely dispute the amount of sale proceeds. It challenges the validity of the sealed sale process itself, including this Court's jurisdiction and venue, the Government's failure to give notice, and the absence of any opportunity to be heard before disposition. Money cannot restore the Vessel once it is scrapped. *Cf. United States v. Esposito*, 970 F.2d 1156, 1160 (2d Cir. 1992) (interlocutory sale of forfeiture property may be effectively unreviewable after final judgment where the claimant loses the specific property before adjudication); *The Whippoorwill*, 52 F.2d 985, 991–92 (D. Md. 1931) (setting aside sale in forfeiture context and ordering vessel held subject to further order pending proper proceedings). Nor can proceeds preserve the Vessel's operational condition, registry status, evidentiary characteristics, or value as a maritime asset. *See LeBlanc v. United States Priv. & C.L. Oversight Bd.*, 784 F. Supp. 3d 1, 38 (D.D.C. 2025) (irreparable harm must be certain, great, imminent, and beyond remediation); *cf. The Whippoorwill*, 52 F.2d at 991–92. The Government's position would reduce the original *res* to scrap proceeds before the Court decides whether the sale that created those proceeds was valid.

The balance of equities also favors temporary preservation. The relief Burevestmarin seeks is limited and interim. It would preserve the Vessel only long enough for notice, service, a show-cause response, and an expedited hearing. Any legitimate incremental cost to GMS or another controller from a short preservation order is economic and can be addressed through security if supported by competent proof. *See The Bella*, 270 F. 287, 288–89 (D.N.J. 1920) (conditioning relief from an interlocutory vessel sale on security protecting the purchaser); *cf. Delaware & H. Ry. Co. v. United Transp. Union*, 450 F.2d 603, 621 (D.C. Cir. 1971) (recognizing that security may protect an enjoined party from compensable harm while the *status quo* is preserved). By contrast, destruction of the Vessel would be permanent. It would deprive Burevestmarin and the Court of meaningful relief before the threshold issues have been adjudicated.

The public interest likewise favors preservation. This case concerns the Government's use of civil forfeiture procedures to sell a foreign-owned vessel in a sealed proceeding without notice to a known claimant. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). The public interest is served by preserving the *status quo* long enough for the Court to decide whether its Sale Order was validly entered, whether the Government complied with the Supplemental Rules, whether jurisdiction and venue exist, and whether Burevestmarin was entitled to notice before sale. *See League of Women Voters*, 838 F.3d at 12 ("There is generally no public interest in the perpetuation of unlawful agency action."); *see also Ctr. for Sci. in the Pub. Int. v. Regan*, 727 F.2d 1161, 1167–68 (D.C. Cir. 1984) (discussing doctrine

preventing a party from defeating judicial review by mooting the case). The requested order would not return the Vessel to service, adjudicate final title, or decide forfeiture. It would simply prevent irreversible destruction while the Court determines whether the sale can stand.

### E. The Requested Relief Is Narrow and Does Not Require the Court to Decide Final Title

The relief Burevestmarin seeks is narrow, practical, and tailored to the emergency. The Government may argue that the Court cannot finally adjudicate control over the original *res* after sale to GMS and transfer outside the United States. Burevestmarin does not ask the Court to decide that question now. Nor does it ask the Court to divest GMS of title, adjudicate forfeiture, unwind the sale on an emergency record, or decide whether any substitute *res* will ultimately be adequate. Burevestmarin asks only for interim preservation, disclosure, service, and a prompt show-cause process before the Vessel is irreversibly destroyed.

The show-cause order implements that limited relief in concrete steps. **First**, the order should require the Government to identify all persons and entities known to have possession, custody, ownership, management, operational control, agency authority, registry authority, insurance authority, port-agent authority, recycling-yard authority, or other control over the Vessel. That includes GMS, any GMS affiliate or agent, any vessel manager, local buyer, port agent, recycling yard, and any person involved in beaching, scrapping, dismantling, transfer, reflagging, encumbrance, or disposition of the Vessel. This identification relief is necessary because the Government says it no longer controls the Vessel. If that is so, the Court and Burevestmarin need to know who does.

**Second**, the order should require the Government to transmit the motion, supporting papers, and show-cause order to those persons immediately and to certify the method, date, time, and recipient of each transmission. That requirement does not finally bind any nonparty. It

ensures notice. It also addresses the very defect that infected the Sale Order: the absence of direct notice to a known claimant before disposition of the defendant property. The Government should not be permitted to say it lacks control while withholding the information needed to reach the persons who do have control.

**Third**, the order should authorize service of ancillary process on GMS through its Maryland resident or authorized agent and appoint Capital Process Servers or another suitable process server for that purpose under Rule 4.1. Service on GMS is is the means by which the Court can bring the purchaser and alleged current controller into the process before the Vessel is destroyed.

**Fourth**, the order should require GMS and any other served respondent to show cause why the Vessel should not be preserved, delivered into custody, paid into Court, or otherwise held subject to further order pending adjudication of the Sale Order's validity. *See* Supp. R. C(5); Supp. R. C(3)(c)*; see also Treasure Salvors*, 621 F.2d at 1347–48. That is the precise mechanism Rule C(5) contemplates. *See W. Bulk Carriers (Australia) Pty. Ltd. v. P.S. Int'l, Inc.*, 164 B.R. 616, 622 (S.D. Ind. 1994). It protects due process on both sides. GMS may appear, object to jurisdiction, contest service, assert purchaser rights, address bond, and explain its relationship to the Vessel. Burevestmarin, in turn, receives the process it was denied before the sealed sale.

**Fifth**, the order should require status certifications from GMS and any served respondent. At a minimum, each respondent should identify its relationship to the Vessel, the Vessel's current location and status, whether beaching or cutting has begun, the identity of any yard, local buyer, port agent, vessel manager, or recycling agent involved, and any planned steps toward scrapping, reflagging, transfer, encumbrance, or disposal. This is necessary because the

emergency is factual as well as legal. The Court cannot decide whether meaningful relief remains available without knowing whether the Vessel is still intact, where it is, who controls it, and what is about to happen.

**Sixth**, the order should require the Government to produce or file under seal the documents that made the transfer and contemplated scrapping possible. Those documents include the sale agreement, bill of sale, payment records, proceeds-account information, title and registry documents, OFAC or Treasury license or authorization, DOJ approval or non-objection, and communications reflecting current control and intended disposition. This production is narrow. It goes only to the Sale Order, the sale, the claimed substitute *res*, the current control chain, and any U.S. Government authorization on which GMS or others may rely to scrap blocked property. Without those documents, neither the Court nor Burevestmarin can test the Government's position that the sale is complete, the proceeds are an adequate substitute, and nothing remains for the Court to preserve.

**Seventh**, the order should require disclosure and suspension of any U.S. Government authorization that enables destruction of the Vessel. The Amended Complaint alleges that the Vessel remains blocked property. If GMS is lawfully proceeding to purchase, transfer, or scrap the Vessel, some OFAC, Treasury, DOJ, or other Government license, authorization, approval, non-objection, bill of sale, transfer document, or similar instrument likely permits or facilitates that conduct. The Court should therefore require the Government to identify and produce any such authorization. *See* Supp. R. C(5); Supp. R. G(1); *United States v. All Assets Held at Bank Julius Baer & Co.*, 309 F.R.D. 1, 17–18 (D.D.C. 2015). Pending the show-cause hearing, the

Court should also direct the Government to suspend any such authorization.[9] In the alternative, the Court should require the Government to notify any authorization recipient of the Court's *status quo* order and take all reasonable steps within its authority to prevent reliance on any such authorization pending a show-cause hearing.

**Eighth**, the order should temporarily restrain beaching, scrapping, cutting, dismantling, recycling, transfer, reflagging, re-registration, encumbrance, relocation, or disposition of the Vessel pending the show-cause hearing. *See Dean Foods*, 384 U.S. at 603–05. That restraint is the core *status quo* relief. It does not require the Vessel to return to service. It does not require GMS to sail the Vessel anywhere. It does not finally reassign title. It simply prevents irreversible destruction long enough for notice, service, disclosure, and a hearing. Courts have long recognized that, when the validity of a vessel sale or forfeiture process is in doubt, the proper interim course is to hold the *res* subject to further order rather than allow the property to disappear before review. *See The Whippoorwill*, 52 F.2d at 991–92; *The Bella*, 270 F. at 288–89.

**Ninth**, and finally, the order should preserve all objections and reserve all merits questions. Any respondent should be allowed to appear specially to contest personal jurisdiction, service, venue, the Court's authority, the scope of relief, security, ownership, title, or any other objection. Nothing in the order should adjudicate final title, ownership, forfeiture, the validity of the Sale Order, the validity of the sale, the adequacy of the substitute *res*, or personal jurisdiction

[9] The Government's contention that an injunction requiring the suspension of an OFAC license would "strik[e] at the heart of the Government's power to manage national security" is off-base. ECF No. 28 at 23. Burevestmarin does not seek to overturn an OFAC determination on this emergency motion: it merely seeks an order that would temporarily maintain the *status quo* pending a merits determination in this case. Moreover, the Government cannot explain how an interim order requiring the suspension of a license to permit the scrapping of a commercial vessel—which suspension would only maintain the *status quo* and not return the vessel to service—could have any impact on national security.

over any respondent. This preserves the Court's ability to decide these issues on a full record and without prejudice to any interested party's position.

This approach also accommodates the Government's and GMS's asserted interests. If GMS claims to be a good-faith purchaser, it may say so in response to the show-cause order. If GMS claims preservation will impose incremental costs, it may submit competent evidence and request appropriate security. If the Government claims the Court can act only with respect to proceeds, it may identify the proceeds, the account, the sale documents, and the legal basis for its position. What should not happen is the destruction of the original *res* before any of those issues are tested. Once the Vessel is cut or recycled, the Court will be asked to decide the validity of a sale whose subject has been deliberately destroyed. The Supplemental Rules, Rule 65, and the Court's authority over its interlocutory orders do not require that result.

### F. A Nominal Bond Is Appropriate

No substantial bond is required for the narrow preservation relief Burevestmarin seeks. The primary source of relief is Supplemental Rule G(7)(a), which authorizes the Court, when the Government lacks actual possession of defendant property, to enter "any order necessary to preserve the property" or prevent its removal or encumbrance. Supp. R. G(7)(a). That rule contains ***no bond requirement***. *Compare* Supp. R. G(7)(a) *with* Supp. R. G(7)(b)(v). Nor does Rule G's express security provision apply here. Rule G(7)(b)(v) requires security only when property is delivered to a claimant pending the action. Supp. R. G(7)(b)(v). Burevestmarin does not seek delivery of the Vessel to itself. It seeks preservation of the Vessel for the Court's own disposition pending a prompt show-cause process.

To the extent Rule 65(c) applies, it does not require a substantial bond on this record. Rule 65(c) requires security only "in an amount that the court considers proper." Fed. R. Civ. P. 65(c). The D.C. Circuit has held that this language gives district courts broad discretion over

both the amount of security and whether security is necessary at all where the restraint will cause no material damage. *See Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980); *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999). Courts in this District likewise set nominal or no bond where the restrained party identifies no concrete, quantifiable injury from the temporary restraint. *See N. Am.'s Bldg. Trades Unions v. Dep't of Def.*, 783 F. Supp. 3d 290, 315 (D.D.C. 2025); *Associated Press v. Budowich*, 780 F. Supp. 3d 32, 59–60 (D.D.C. 2025).

Those principles apply here. The requested order is temporary, preservation-focused, and designed only to maintain the *status quo* until the Court can hold a prompt show-cause hearing. It does not transfer title or deliver the Vessel to Burevestmarin. It preserves the original *res* long enough for notice, service, disclosure, and judicial review. That type of relief does not warrant a bond keyed to vessel value, sale price, or anticipated scrap profit. As courts in this District have recognized, preservation of the *status quo* supports nominal security. *See District of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 91 (D.D.C. 2012) ("[O]nly a party seeking to change (not maintain) the status quo needs to post a bond." (citation omitted)).

Nor should the bond become a device for denying emergency review. A bond must secure costs and damages caused by a wrongful restraint; it is not a merits award, a substitute sale price, or an advance valuation of the property being preserved. *See* Fed. R. Civ. P. 65(c); *Fed. Prescription Serv.*, 636 F.2d at 759. Courts reject speculative or punitive security demands, particularly where a substantial bond would effectively deny meaningful judicial review. *See Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168–69 (D.D.C. 1971); *Phang v. Blanche*, 836 F. Supp. 3d 90, 114–15 (D.D.C. 2026). Any claimed costs from a short standstill should be proved, not assumed.

The appropriate course is therefore to set nominal security now and allow any respondent to seek an increase at the show-cause hearing upon competent proof. If GMS or another respondent contends that a short preservation order will cause incremental out-of-pocket costs, it may submit verified evidence. Any such showing should be limited to costs directly and solely caused by the order during the period of restraint. It should exclude the Vessel's value, the sale price, expected scrap or resale profit, ordinary business or operating costs, and costs the respondent would have incurred regardless of the order. On the present record, a nominal bond of $100 is sufficient.

## IV. CONCLUSION

For the above reasons, Burevestmarin respectfully requests that the Court grant emergency status quo relief; issue ancillary process under Supplemental Rule C(5); require the Government to identify and serve GMS and any other person exercising control over the Vessel; require those persons to show cause why the Vessel should not be preserved; require the Government to identify, produce, and suspend any OFAC authorizations that would permit the transfer, scrapping, or recycling of the Vessel pending that show-cause process; restrain any scrapping, dismantling, beaching, recycling, transfer, reflagging, encumbrance, or other disposition pending that show-cause process; set nominal security; and grant such other relief as is just and proper.

Dated: October 23, 2026

Respectfully Submitted,

*/s/ Michael J. Baratz* ____________________

Michael J. Baratz, D.C. Bar No. 480607
**Steptoe LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902

mbaratz@steptoe.com

Andrew C. Adams, N.Y. Bar No. 4727293
**Steptoe LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
acadams@steptoe.com
Admitted *pro hac vice*

*Attorneys for Claimant Burevestmarin LLC*